# EXHIBIT A

Index of All Process, Pleadings and Orders

Cause No. 26-3106-C425, 425th Judicial District Court, Williamson County, Texas

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| OP III ATX HIGHRIDGE, LP,<br>Plaintiff,<br>v.<br>TERRA CARTA PARTNERS LLC,<br>Defendant. | §<br>§<br>§<br>§<br>§ | Civil Action No. 1:26-cv-02977<br><br>(Removed from Cause No. 26-3106-C425,<br>425th Judicial District Court,<br>Williamson County, Texas) |

**INDEX OF ALL PROCESS, PLEADINGS AND ORDERS SERVED OR FILED IN THE STATE COURT ACTION**

(Fed. R. Bankr. P. 9027(a)(1); Local Rule CV-81)

| Exhibit | Document | Date filed or served |
|---|---|---|
| A-1 | Docket sheet, Cause No. 26-3106-C425, 425th Judicial District Court, Williamson County, Texas | As printed on October 21, 2026 |
| A-2 | Plaintiff's Original Petition, OP III ATX Highridge, LP v. Terra Carta Partners LLC | Filed September 4, 2026 |
| A-3 | Citation (Out of State) issued September 18, 2026 to Terra Carta Partners LLC, with process server's delivery notation; and the same citation as forwarded by the Texas Secretary of State on October 8, 2026, with the return of service form | Served October 1, 2026 |

No answer, motion, order, setting or other paper has been filed or entered in the State Court Action other than the documents listed above.

# EXHIBIT A-1

Docket Sheet

Cause No. 26-3106-C425, 425th Judicial District Court, Williamson County, Texas

# Register of Actions
## Case No. 26-3106-C425

**OP III ATX Highridge, LP vs Terra Carta Partners, LLC** § § § § §

Case Type: **Real Property - Other**
Date Filed: **09/04/2026**
Location: **425th Judicial District Court**

### Party Information

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | **Terra Carta Partners, LLC** | |
| **Plaintiff** | **OP III ATX Highridge, LP** | **Michael Lynn Navarre**<br>*Retained*<br>512-879-5050(W) |

### Events & Orders of the Court

OTHER EVENTS AND HEARINGS

| | |
|---|---|
| 09/04/2026 | **Original Petition (OCA)** |
| 09/04/2026 | **JURY - Jury Demand** |
| 09/17/2026 | **Request for Issuance** |
| 09/18/2026 | **Citation** |
| | Terra Carta Partners, LLC — Unserved |

# EXHIBIT A-2

Plaintiff's Original Petition, with Exhibits 1 through 3
Filed September 4, 2026

Filed: 9/4/2026 7:40 PM
Lisa David, District Clerk
Williamson County, Texas
Michele Darlene Rodriguez

26-3106-C425

CAUSE NO. ________________

| | | |
|---|---|---|
| OP III ATX HIGHRIDGE, LP,<br>Plaintiff, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | WILLIAMSON COUNTY, TEXAS |
| | § | Williamson County - 425th Judicial District Court |
| TERRA CARTA PARTNERS, LLC, | § | |
| | § | |
| Defendant. | § | ________ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

1. Plaintiff OP III ATX Highridge, LP files this Original Petition and, in support, would respectfully show the Court as follows:

## I. DISCOVERY PLAN

2. Discovery will be conducted pursuant to Level 2, as described by Rule 190 of the Texas Rules of Civil Procedure.

## II. PARTIES

3. Plaintiff OP III ATX Highridge LP ("OP III ATX") is a Texas limited partnership doing business in Williamson County, Texas.

4. Defendant Terra Carta Partners, LLC ("Terra Carta") is a Delaware limited liability company doing business in the State of Texas. Terra Carta has not designated or maintained a resident agent for service of process. Pursuant to Sections 17.044 and 17.045 of the Texas Civil Practice and Remedies Code, Terra Carta may be served with process by serving the Texas Secretary of State. Furthermore, pursuant to Sections 2.251 and 2.252 of the Texas Business & Commerce Code, Terra Carta may be served with process by serving the Texas Secretary of State. Terra Carta may also be served by serving its Delaware registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## III. JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to art. 5 §§ 1 and 8 of the Texas Constitution and Texas Government Code §§ 24.007 and 24.008.

6. Venue is appropriate in Williamson County pursuant to Section 15.011 of the Texas Civil Practice and Remedies Code. Venue is also appropriate in Williamson County pursuant to Section 15.002(a) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to the claim occurred in Williamson County.

## IV. SUMMARY

7. This action concerns the real property in Williamson County that was sold pursuant to an Earnest Money Contract[1] ("Earnest Money Contract") that was amended by the First Amendment to Earnest Money Contract ("First Amendment").[2] As set forth in the Special Warranty Deed, effective January 12, 2024 and recorded in the Williamson County Official Public Records ("Special Warranty Deed"), Plaintiff is the lawful owner of the tracts of land comprising approximately 334 acres, more or less, located in Williamson County, Texas ("Property").[3]

8. Terra Carta Partners, LLC ("Terra Carta") has baselessly asserted that the sale of the Property to Plaintiff is somehow invalid, void or voidable, and such assertions have resulted in harm and economic damages to Plaintiff. In addition to damages, Plaintiff seeks a declaratory judgment that it is the lawful owner of the Property.

9. In the alternative, Plaintiff seeks to quiet title and nullify Terra Carta's baseless claims that (1) the sale is somehow invalid and (2) Terra Carta maintains a possessory interest in

---

[1] The Earnest Money Contract is attached hereto and incorporated herein as **Exhibit 1**.

[2] The First Amendment is attached hereto and incorporated herein as **Exhibit 2**.

[3] The Special Warranty Deed is attached hereto and incorporated herein as **Exhibit 3**.

the Property. Terra Carta's claims constitute a cloud on title, as it claims to have a right of possessory interest that challenges Plaintiff's superior rights.

10. Additionally, and also in the alternative, Plaintiff seeks trespass to try title and respectfully asks the Court to hold that Plaintiff holds superior title to the Property in fee simple.

## V. FACTS

11. On November 3, 2023, High Ridge Development LLC, High Ridge Development II LLC, and High Ridge Development III LLC (collectively, "Sellers") agreed to sell and convey tracts of land comprising approximately 334 acres, more or less, located in Williamson County, Texas to Cerco Development Inc., a Texas Corporation and predecessor-in-interest to Plaintiff, for the purchase price of $39,096,000.00, along with a potential contingent earnout amount.

12. The Property to be conveyed pursuant to the Earnest Money Contract consisted of three parcels and an easement estate more particularly described in Exhibit A of the Earnest Money Contract. Parcel A consisted of four individual tracts, including a 25.00 acre tract of land described by metes and bounds in Exhibit A attached to the Special Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas, a 25.01 acre tract of land described by metes and bounds in Exhibit B attached to the Special Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas, a 25 acre tract of land described as Tract Three in the Special Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas save and except portions conveyed to the City of Cedar Park, and an easement estate recorded under Document No. 2015002168 of the Official Public Records of Williamson County, Texas. Parcel B consisted of Lots 1 and 2, Block A, RAINBOW HEIGHTS FINAL PLAT, a subdivision in Williamson County, Texas, and Parcel C consisted of all of that certain tract of land situated in the John D. Anderson

Survey, Abstract No. 16, City of Cedar Park, Williamson County, Texas.

13. On January 11, 2024, Sellers and Plaintiff, successor-in-interest to Cerco Development, Inc., entered into the First Amendment to the Earnest Money Contract. Also on January 11, 2024, Sellers and OP III ATX executed, before a public notary, the Special Warranty Deed conveying the Property from Sellers to Plaintiff, as described more particularly in Exhibit A to the Special Warranty Deed.

14. On January 16, 2024, the Special Warranty Deed was recorded in the Williamson County Official Public Records as Document No. 2024003269.

15. Plaintiff has become aware that Terra Carta baselessly asserts that these documents and the transaction constituted fraud, essentially claiming that the Earnest Money Contract, First Amendment, and Special Warranty Deed are invalid and that Plaintiff is not the rightful owner of the Property. Terra Carta's claims have caused harm and economic damages to Plaintiff as a result.

## VI. CAUSES OF ACTION

### A. Declaratory Judgment

16. The allegations in paragraphs 1 to 15 are incorporated herein by reference.

17. There is a real and substantial justiciable controversy between Plaintiff and Terra Carta concerning the validity of the Earnest Money Contract, First Amendment, and Special Warranty Deed, and the ownership of the Property.

18. To resolve this controversy, Plaintiff seeks a declaratory judgment pursuant to the Uniform Declaratory Judgments Act regarding the rights and obligations of the parties, including the following declarations:

a. that the November 3, 2023, Earnest Money Contract is valid and binding upon the parties thereto;

b. that the January 11, 2024, First Amendment to the Earnest Money Contract is valid and binding upon the parties thereto;

c. that the Special Warranty Deed laying out the proper boundary line between adjoining properties and effective January 12, 2024 and recorded January 16, 2024 is valid and binding upon the parties thereto;

d. that Plaintiff is the valid and lawful owner of the Property; and

e. that Terra Carta is enjoined from making additional baseless assertions regarding the Earnest Money Contract, First Amendment, Special Warranty Deed, and transaction with the intent to cause harm to Plaintiff.

19. Plaintiff seeks recovery of its attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code.

**B. Suit to Quiet Title**

20. The allegations in paragraphs 1 to 15 are incorporated herein by reference.

21. In the alternative, Plaintiff respectfully requests that the Court remove the cloud on title to the Property by declaring that Terra Carta has no interest in the Property pursuant to the valid and enforceable sale documents and that Terra Carta's claims seeking to cloud title on the Property are invalid.

22. To prevail on a quiet title action, Plaintiff must show (1) it has an interest in a specific property, here the Property is established by the sale documents; (2) that title to the property is affected by a claim by the defendant, here title to the Property is affected by the baseless claims of Terra Carta that the sale constituted a fraud: and (3) that Terra Carta's claim, although it may be facially valid, is invalid or unenforceable, as in this case. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App. - El Paso 2012, pet denied.) (citing *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.)). As such, Plaintiff has established the elements to quiet title to remove Terra Carta's cloud on the Property.

**C. Trespass to Try Title**

23. The allegations in paragraphs 1 to 15 are incorporated herein by reference.

24. In the alternative, Plaintiff respectfully requests that the Court determine that Plaintiff has superior legal title and right to possession of the Property against all other claimants as a result of the sale documents.

25. To prevail on a trespass to try title action, Plaintiff must show its title by (1) a regular chain of title conveyances to Plaintiff; (2) a superior title to that of Terra Carta; (3) title by limitations; or (4) prior possession that has not been abandoned. *Teon Management, LLC v. Turquoise Bay Corporation*, 357 S.W.3d 719, 728 (Tex.App.—Eastland 2012, no pet. h.). Here, Plaintiff can prove that the sale documents constitute a regular chain of title conveyance to Plaintiff and a superior title to that of Terra Carta.

## VII. DAMAGES

26. Plaintiff incorporates the foregoing paragraphs the same as if fully set forth herein.

27. As a result of Terra Carta's actions, Plaintiff suffered actual and consequential damages in excess of the minimal jurisdictional requirements of this Court.

## VIII. REQUEST FOR ATTORNEYS' FEES AND COSTS

28. Plaintiff incorporates the foregoing paragraphs the same as if fully set forth herein.

29. Terra Carta's actions have made it necessary for Plaintiff to file this suit. Plaintiff incurred and will continue to incur reasonable and necessary attorneys' fees. Pursuant to TEX. CIV. PRAC. & REM. CODE 37.009, Plaintiff is entitled to an award of its reasonable and necessary attorneys' fees. This includes its reasonable attorneys' fees for the cost of successfully making or responding to an appeal to the court of appeals and the Texas Supreme Court. All conditions precedent to recovery of these fees have been satisfied.

30. Pursuant to Rule 131 of the Texas Rules of Civil Procedure, Plaintiff seeks the recovery of its costs incurred in this action.

## IX. REQUEST FOR A JURY TRIAL

31. Plaintiff respectfully requests a trial by jury.

## X. CONDITIONS PRECEDENT

32. All conditions precedent to Plaintiff's claims for relief are satisfied.

## XI. CLAIMS FOR RELIEF

33. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff is seeking non-monetary relief and monetary relief over $250,000 but not more than $1,000,000, excluding interest and attorneys' fees and costs.

## XII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

(1) that this matter be set down for trial by jury;

(2) that, upon trial/hearing, the Court enter a declaratory judgment pursuant to the Uniform Declaratory Judgment Act as set forth herein;

(3) that, in the alternative, the Court enter judgment extinguishing the cloud on title created by Terra Carta's baseless assertions that the sale constitutes a fraud and is invalid or void; or

(4) that, in the alternative, the Court enter judgment declaring the Plaintiff holds superior title to the Property pursuant to the legally valid and binding sale documents;

(5) that, upon trial/hearing, the Court award Plaintiff its reasonable attorneys' fees as permitted by law, including reasonable fees for the cost of successfully making or responding to an appeal to the court of appeals and the Texas Supreme Court;

(6) that, upon trial/hearing, the Court award Plaintiff its costs, including costs of court; and

(7) for all such other relief, at equity or otherwise, to which Plaintiff may show itself entitled.

Respectfully submitted,

/s/ Michael L. Navarre
Michael L. Navarre
State Bar No. 00792711
BEATTY NAVARRE STRAMA, PC
901 S. Mopac Expy., Bldg. 1, Ste. 200
Austin, Texas 78746
(512) 879-5050—Telephone
mnavarre@bnsfirm.com

ATTORNEYS FOR PLAINTIFF,
OP III ATX HIGHRIDGE, LP

# EARNEST MONEY CONTRACT

THIS **EARNEST MONEY CONTRACT** (this "***Contract***") is made and entered into by and between **HIGH RIDGE DEVELOPMENT LLC, HIGH RIDGE DEVELOPMENT II LLC,** and **HIGH RIDGE DEVELOPMENT III LLC**, each, a Delaware limited liability company (collectively, "***Seller***"), and **CERCO DEVELOPMENT, INC.**, a Texas corporation ("***Purchaser***").

## AGREEMENT

In consideration of the mutual covenants set forth herein, the parties hereto agree as follows:

**Section 1**. Sale and Purchase. Seller shall sell and convey unto Purchaser, and Purchaser shall purchase and accept from Seller, for the Purchase Price stated below and subject to the terms and conditions set forth in this Contract, the following described property (collectively referred to as the "***Property***"):

a. The tracts of land comprising approximately 334 acres, more or less, located in Williamson County, Texas, and being depicted and described on **Exhibit A** attached hereto, together with all rights and appurtenances thereto, including any right, title and interest of Seller in and to all strips and gores between the land and abutting properties, all rights in and to easements, air rights, development rights, zoning approvals and permits, and drainage rights incidental to the such land including, without limitation all development approvals or rights in respect thereto (such land and interests being collectively referred to as the "***Land***").

b. All buildings, structures, improvements, and fixtures owned by Seller and located on the Land (collectively, the "***Improvements***").

c. All other rights, privileges, appurtenances, and licenses owned by Seller and in any way related to or used in connection with the properties described above in this Section 1, including, without limitation, all of Seller's interest in the following to the extent they relate to the ownership, use, leasing, maintenance, service, and/or operation, as and if applicable, of any of the above-described property: (i) contracts or agreements such as maintenance, service, or utility contracts, (ii) warranties, guaranties, indemnities, and claims, (iii) development rights, utility capacity, governmental approvals, licenses, and permits, (iv) plans, drawings, specifications, surveys, engineering reports and environmental reports, and (v) any other tangible personal property owned by Seller, if any, which is located on or about the Land or Improvements.

**Section 2**. Purchase Price. The purchase price (the "***Purchase Price***") to be paid by Purchaser to Seller for the Property is [redacted] The Purchase Price shall be paid at Closing (as hereinafter defined) by Purchaser's assumption of the Property Loan (as defined below).

**Section 3**. Earnest Money. Within three (3) days after the Effective Date (as hereinafter defined) hereof, Purchaser shall deliver to Heritage Title Company of Austin, Inc., having an address at 200 W. 6th Street, Suite 1600, Austin, Texas 78701, Attn: John Bruce, (512) 505-5075 (jbruce@heritage-title.com) (the "***Title Company***"), as escrow agent, the sum of TEN

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**THOUSAND AND 00/100 US DOLLARS ($10,000.00)** as earnest money (the "***Earnest Money***"). The Earnest Money or so much thereof as is on deposit at the time in question, is herein called the "***Earnest Money***". Failure by Purchaser to timely deliver the Initial Earnest Money shall render this Contract voidable by Seller by written notice received by Purchaser at any time prior to the time the Earnest Money has been delivered by Purchaser to the Title Company. If this Contract is not terminated prior to the expiration of the Inspection Period (as hereinafter defined), then the Earnest Money shall thereafter be non-refundable (but applicable to the Purchase Price at Closing) except as expressly otherwise provided herein. All Earnest Money shall be applied, paid or retained in accordance with this Contract.

**Section 4**. Title Report and Survey.

a. Within five (5) days following the Effective Date, Seller shall cause the Title Company to issue an Owner's Title Policy Commitment (the "***Commitment***") covering the Land and obligating the Title Company to issue to Purchaser at Closing an Owner's Policy of Title Insurance in the full amount of the Purchase Price, showing good and indefeasible fee simple title to the Land in Seller and showing all encumbrances and other matters, if any, relating to the Land, together with a true, correct and legible copy of each document referred to in the Commitment. With regard to the standard printed exceptions and other common exceptions generally included in Texas form Commitments for Title Insurance: (i) the exception for ad valorem taxes shall reflect only taxes for the current year; (ii) the exception for area and boundaries shall be annotated to show that upon receipt by the Title Company of a satisfactory survey, the exception will at the Closing be limited to "shortages in area" (at Purchaser's cost); and (iii) there shall be no general exceptions, such as any exception for visible and apparent easements, unrecorded easements, rights of parties in possession, tenants under unrecorded leases, or the like. The cost of the Commitment and Title Policy, except for the deletion of the survey exception and/or any endorsements thereto requested by Purchaser, shall be borne by Seller.

b. Within five (5) days following the Effective Date, Seller will provide a copy of the existing land title survey of the Land in Seller's possession (the "***Existing Survey***"). Purchaser may, at Purchaser's cost and expense, cause the Existing Survey to be updated or obtain a new land title survey. Because Seller is responsible for the cost of an updated or new land title survey, Seller shall contract with the surveyor reasonably approved by the Parties. Seller and Purchaser mutually approve 4Ward and Early surveying as approved surveyors for an updated or new land title survey. The updated or new land title survey shall be an ALTA survey with Table A items consistent for a land purchase. In such event, Purchaser shall promptly deliver to the Title Company a copy thereof. If Purchaser does not provide a new or updated survey, then the Existing Survey shall be defined as "***Survey***" herein. If Purchaser provides a new or updated land title survey of the Land, then such survey shall be defined as "***Survey***" herein.

c. If the Commitment fails to show good and indefeasible fee simple title to the Land in Seller, or if the Survey or Commitment reflect any matter which is unacceptable to Purchaser, then Purchaser may give Seller written notice thereof (the "***Objection Notice***") within fifteen (15) days after Purchaser has received the last to be received of the Commitment or Survey, specifying the objections of Purchaser. After receipt of the Objection Notice, Seller may, but without obligation, attempt to cure such objections. In all cases and notwithstanding any provision hereof to the contrary, Seller shall, on or before Closing, discharge (i) any liens arising by, through or under Seller, or that were accepted by Seller at the time of Seller's acquisition of the Property, other than the Property Loan as described below, and (ii) conveyances of interests in the Property


EXHIBIT 1

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

by Seller on or after the Effective Date (collectively, the "***Mandatory Cure Matters***"). On or before Closing, Seller will be obligated to pay in full all indebtedness pertaining to the Property and obtain fully executed releases of all liens securing said indebtedness. Seller may, upon written notice to Purchaser, cure monetary defects out of the Closing proceeds so long as said defects are cured or satisfied at Closing. All matters not objected to within the above-described time (excluding the Mandatory Cure Matters) period shall be "***Permitted Exceptions***". All documents and agreements relating to the Rezone (as hereinafter defined) that have been executed by Seller at Purchaser's request shall be Permitted Exceptions. In no event shall the Mandatory Cure Matters (or rights of parties in possession) be Permitted Exceptions.

d. In the event Seller has not cured Purchaser's objections specified in the Objection Notice within ten (10) days following the date of the Objection Notice by causing the Commitment and Survey to be amended to give effect to matters that are cured, Purchaser shall, on or before the day which is ten (10) days following the end of Seller's 10-day curative period either (i) terminate this Contract by giving written notice thereof to Seller and Title Company, whereupon neither Seller or Purchaser shall have any further rights or obligations under this Contract, and the Earnest Money shall be fully refunded to Purchaser; or (ii) waive all of such uncured objections and consummate the purchase of the Property subject to said objections (provided, that, as aforesaid, in all events Seller shall be obligated to cure the Mandatory Cure Matters). Failure by Purchaser to make the election described in the preceding sentence timely shall constitute an election by Purchaser under clause (ii) of the preceding sentence.

e. Purchaser shall have the right from time to time to obtain updates to the Commitment and an updated Survey. If any update to the Commitment or update to the Survey reveals any new matter not disclosed on the Commitment or Survey issued before such update or the Survey (each an "***Additional Title Defect***"), Purchaser may object thereto by providing Seller written notice of such objections to such Additional Title Defect no later than five (5) business days after Purchaser's receipt of such update to the Commitment or Survey. If Seller fails to cure or remedy such Additional Title Defect within a period (the "***Seller's Cure Period***") that ends seven (7) business days following receipt of Purchaser's notice thereof (Seller having no obligation to do so unless the same constitutes a Mandatory Cure Matter), then Purchaser shall elect by written notice to Seller within five (5) business days following the expiration of Seller's Cure Period (the "***Purchaser's Election Period***"), either to (a) terminate this Contract, in which event all Earnest Money shall be fully refunded to Purchaser, and neither party shall have any further rights or obligations pursuant to this Contract (except as expressly otherwise provided for herein), or (b) waive the unsatisfied objections and close the transaction with no reduction in the Purchase Price. If necessary to give effect to the provisions of this paragraph in terms of the time in which Purchaser may object, Seller's Cure Period, and in which Purchaser may elect to terminate this Contract, the Closing shall be adjourned and (unless Purchaser elects to terminate this Contract) shall occur on the fifth (5th) business day following the expiration of the Purchaser's Election Period.

**Section 5.** Investigation by Purchaser.

a. Within five (5) days following the Effective Date, Seller shall deliver to Purchaser true and correct copies of all of the following to the extent within Seller's possession or control (collectively, the "***Submission Materials***"): any default notice from any lender with a loan secured by the Property; a true and correct copy of the loan documents affecting the Property; environmental reports; water, stormwater drainage and sanitary sewer discharge treatment capacity

letters and receipts; soils reports; engineering studies; any and all other reports and studies regarding the physical condition of the Land; all surveys of the Land (including topographic, utility, and boundary); any other written agreements impacting the operation and maintenance of the Property; and the owner policy of title insurance Seller received in connection with its purchase of the Property (with the amount and premium redacted therefrom). Seller acknowledges and agrees that the Purchase Price includes consideration for Purchaser's use of certain civil engineering plans, landscaping plans, surveys, and/or any third-party reports (including any geotechnical or environmental reports) delivered as part of the Submission Materials (collectively, "***Consultant Work Product***"). Seller will cooperate with Purchaser with respect to obtaining any consents and reliance letters necessary for Purchaser to use and rely on the Consultant Work Product from the civil engineer and/or consultants, and professionals providing such plans, surveys, and reports, provided that the cost required for such consents and/or reliance letters will be at Purchaser's sole cost and expense. Except as expressly provided in Section 8 hereof, Seller makes no representations or warranties whatsoever regarding the Submission Materials.

b. So long as this Contract remains in effect, Purchaser shall have the right to take the following actions:

1. Conduct such engineering and economic feasibility studies, environmental and other studies of the Property to determine that the Property is suitable, in Purchaser's sole opinion, for Purchaser's intended use of the Property.

2. Conduct all such inspections, tests and examinations as Purchaser deems necessary of the Land and any other items which are a part of the Property. Seller hereby grants Purchaser (or Purchaser's representative) the right to enter the Property for the purpose of conducting said inspections, tests and examinations.

No investigation or inspection by Purchaser or Purchaser's representatives shall be deemed to have in any way diminished or waived the representations, warranties, or covenants of Seller set forth in this Contract.

Purchaser shall restore any portion of the Property affected by Purchaser's tests and inspections to the same condition as existed prior thereto as is reasonably practicable. Purchaser hereby agrees to indemnify and hold harmless Seller of, from and against any and all claims, suits, demands, liabilities, losses, costs and expenses arising out of (1) injury or death to third parties or damage to the property of third parties to the extent caused by Purchaser's inspections and tests, and (2) mechanic's and materialman's liens asserted against the Property by any contractor or other person engaged by Purchaser to conduct such tests and inspections; provided, however, in no event shall such indemnification obligations extend to any such matters (i) arising out of or related to discovery of the release of hazardous substances or materials in, on or under the Property, or (ii) any diminution in the value of the Property as a consequence of the results revealed by such tests and studies. The provisions of this paragraph shall expressly survive Closing or termination of this Contract.

**Section 6**. Contingencies.

a. This Contract, at the election of Purchaser made in Purchaser's sole and absolute discretion or for any or no reason whatsoever, may be terminated upon written notice to Seller delivered at any time prior to 11:59 p.m., Austin, Texas local time, on the date that is **forty-**

**five (45)** days following the Effective Date (the "***Inspection Period***"), and upon such termination the Earnest Money shall be refunded to Purchaser (save and except $100.00 thereof which shall be paid to Seller as consideration for this Contract and the rights and options granted Purchaser hereunder) and neither party hereto shall have any further rights, duties or obligations one to the other hereunder.

b. Purchaser's obligation to close the purchase and sale is contingent and specifically conditioned upon Seller not being in default hereunder.

c. Purchaser's obligation to close the purchase and sale is contingent and specifically conditioned upon all the Seller's Express Representations (defined in Section 8 below) being true and correct in all material respects as of the Closing Date.

d. Purchaser's obligation to close the purchase and sale is contingent and specifically conditioned upon Purchaser (i) obtaining from Community Bank of Texas, N.A. ("***Lender***") approval of Purchaser's assumption of that certain existing loan from Lender to Seller in the original principal amount of [redacted] pursuant to a Loan and Security Agreement dated June 29, 2022 (the "***Loan Agreement***"), or Lender's refinancing of the Property Loan, and (ii) an amendment to the Loan Agreement and other Loan Documents (as defined in the Loan Agreement) or replacement thereof acceptable to Purchaser in its sole discretion, which may include the right for Purchaser to extend the maturity of the Property Loan or its refinancing on terms acceptable to Purchaser.

e. If any of the contingencies specified in Sections 6.b, 6.c or 6.d are not satisfied as of the date scheduled for Closing (as the same may have been extended in accordance with this Contract) or such other date specified above, Purchaser may, at Purchaser's option, (i) terminate this Contract by written notice sent or delivered to Seller and receive a full refund of all Earnest Money, free of any claims by Seller or any other person with respect thereto, and neither party hereto shall have any further rights or obligations hereunder, except for those obligations that expressly survive termination; or (ii) waive any of the aforementioned contingencies and proceed with the Closing of the purchase; provided, that, if the contingency described in Sections 6b. or 6c. are not satisfied, Purchaser shall also have the rights granted Purchaser under Section 9b. below.

**Section 7.** Closing.

a. The closing (the "***Closing***") of the sale of the Property by Seller to Purchaser shall occur on the date that is thirty (30) days following the end of the Inspection Period (the "***Original Closing Date***"), unless the Original Closing Date is extended in accordance with this paragraph. In the event the condition to Closing described in Section 6.d above has not then been satisfied, Purchaser shall have the right to extend the Original Closing Date two (2) additional, consecutive periods of thirty (30) days on or before the Original Closing Date or before the end of the applicable 30-day extension period if the Original Closing Date has been extended, by providing written notice to Seller of its election to extend the Original Closing Date, as it may have been previously extended, by an additional 30 days. Notwithstanding the foregoing, at any time after the Effective Date, Purchaser may, at its election, close on an earlier date selected by Purchaser on no less than five (5) days written notice to Seller. The Closing shall occur in the offices of the Title Company or electronically via escrow through the Title Company. The date upon which the Closing actually occurs is herein called the "***Closing Date***".

b. At the Closing, the following shall occur:

1. Seller shall deliver or cause to be delivered to Purchaser:

a. At Purchaser's expense, a standard Texas owner policy of title insurance (the "***Title Policy***") issued by the Title Company insuring, in the full amount of the Purchase Price, that after Closing Purchaser shall be the owner of good and indefeasible fee simple title to the Property, subject only to the Permitted Exceptions. The Title Policy shall be in the form prescribed by Section 4a, but shall also contain such endorsements thereto as may be requested by Purchaser (provided that Purchaser shall pay all additional premiums for such endorsements).

b. A Special Warranty Deed (the "***Deed***") in the form of **Exhibit B** attached hereto, duly executed and acknowledged by Seller, conveying good and indefeasible, fee simple title to the Property to Purchaser free and clear of any liens and encumbrances other than the Permitted Exceptions (for purposes of the Deed, the standard printed exceptions in the Title Policy shall not constitute Permitted Exceptions).

c. Ad valorem tax statements for the Property for the calendar year of the Closing, if available and if not previously presented.

d. A Seller's affidavit of debts and liens and any indemnification to the Title Company that is necessary to cause the Title Company to issue the Title Policy without an exception for materialmen and mechanic's liens, together with such evidence of the authority and capacity of Seller and its representatives as either Purchaser or the Title Company may reasonably require.

e. Either (1) an affidavit complying with Section 1445 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder to the effect that Seller is not a foreign person or (2) if such affidavit may not lawfully be executed, such documents, instruments and agreements as may be reasonably required (and the withholding or escrow of funds necessary to comply with) Section 1445 of the Internal Revenue Code of 1986, as amended.

f. A bill of sale and assignment, duly executed by Seller, conveying all property of Seller set forth in Section 1c above to Purchaser.

g. Execution, acknowledgement and delivery by Seller or its affiliated and/or related entities or individuals of any instruments or documents required by Purchaser or Lender in connection with the assumption of the Property Loan and amendments to the Laon Documents as described in Section 6.d above.

h. Execution, acknowledgement and delivery by Seller and its affiliates and related entities and individuals of the release and waiver of claims described in Section 31.a below.

i. Such other instruments as are customarily executed in the State of Texas to effectuate the conveyance of property similar to the Property, with the effect that, after Closing, Purchaser will have succeeded to all of the rights, titles, and interests of Seller relating to the Property.

2. Seller shall deliver or cause to be delivered to Purchaser exclusive and vacant possession of the Property and all keys to any and all locks at the Property, including, without limitation, to any of the Improvements located thereon.

3. Purchaser shall deliver or cause to be delivered to Seller:

a. Good funds, in the amount of costs or charges owing by Purchaser hereunder, less the Earnest Money and any other credits or deductions provided hereunder.

b. Such evidence of the authority and capacity of Purchaser and its representatives as either Seller or the Title Company may reasonably require.

4. Any Earnest Money not applied under Section 7.b.3.a above shall be returned to or paid at the direction of Purchaser.

5. At the Closing, ad valorem taxes for the current year against or allocable to the Property shall be prorated on the basis of the amount of ad valorem taxes for the current year if and to the extent that the taxing authorities have issued statements therefor (and without regard to any special tax assessment basis) but otherwise on ad valorem taxes assessed for the year next preceding such current tax year. As soon as taxes on the Property for the year of Closing are known Seller and Purchaser shall upon demand readjust the amount to be paid by each party with the result that Purchaser pays only for taxes attributable to the period of time commencing with the Closing Date and Seller receives any adjustment for overpayment of taxes previously paid by Seller. If at Closing the Land is not a separate tax parcel and is part of a larger tax parcel with other property, then upon request by Seller or Purchaser and after otherwise prorating taxes as provided in this paragraph Purchaser will pay the real estate taxes with respect to the Land for the current year and Seller will pay the real estate taxes with respect to the remainder of the tax parcel of which the Land is a part for the current year, or if tax bills have not been issued, then Seller and Purchaser shall each escrow their allocable share of real estate taxes with the Title Company under a tax escrow agreement mutually agreeable to Seller, Purchaser, and Title Company, which in substance will direct the Title Company to pay real estate taxes for the entire tax parcel from such escrow when tax bills are issued by the tax collector.

6. Escrow fees, if any, due at the Closing, shall be borne and paid by Seller and Purchaser equally. Additionally, Seller and Purchaser shall each pay one-half (½) of all recording fees in connection with the recordation of the Deed and any transfer tax or documentary stamp taxes or similar fees, if any, due with respect to the transfer of the Property.

**Section 8.** Representations, Warranties, and Covenants of Seller.

a. Seller represents, warrants and covenants to Purchaser, as of the Effective Date and at Closing as follows (the "***Seller's Express Representations***"):

1. Seller is a duly organized and validly existing limited liability company under the laws of the State of Delaware with full power and authority to perform this Contract. All consents and actions necessary to authorize the execution and delivery of this Contract by Seller have been taken.

2. Seller has, and will have at Closing, good and indefeasible fee simple title to the Property. Seller's title to the Property is free and clear of all mechanic's liens, liens, mortgages, or other monetary encumbrances of any nature which have not be paid by Seller by or at Closing. No work has been performed or is in progress by Seller for which sums are due to any party other than sums which will be paid by Seller before Closing. No materials have been furnished to the Land, the Improvements, or any portion thereof by Seller for which sums are due to any party other than sums which will be paid by Seller before Closing. There are no unpaid debts, liabilities or claims arising from the ownership or operation of the Property other than those debts, liabilities, or claims which shall be paid by Seller at Closing or ad valorem taxes which are the subject of proration and adjustment under Section 7b.

3. No portion of the Property is, or as of the date of the Closing will be, affected by any general, special, or other assessments which remain unpaid or which constitute or which could mature into a lien on the Property, excluding current year ad valorem property taxes levied by all applicable taxing authorities, and the Seller has not received notice of any general, special, or other assessment affecting the Property.

4. There are no actions, suits or proceedings (including condemnation proceedings) pending or, to Seller's knowledge, threatened, against Seller or the Property (or any portion thereof) which could adversely affect the Property or any part thereof or Seller's ability to perform hereunder, including, without limitation, actions, suits or proceedings which question the compliance of the Property with any applicable rules, ordinances, laws and regulations affecting the Property.

5. There are no leases or other agreements affecting the Property and that grant any person or entity the right to use or occupy any part of the Property (including any Improvements thereon). As of the Effective Date and as of the Closing Date, there are and will be no parties in possession of any portion of the Property as lessees, tenants at will or at sufferance, trespassers, or otherwise.

6. Except for this Contract, there are not, as of the Effective Date, any contracts or other obligations outstanding for the sale, exchange or transfer of the Land or any portion thereof. As of the Closing Date there will be no contracts or other obligations outstanding for the sale, exchange or transfer of the Land or any portion thereof.

7. There are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships or voluntary or involuntary proceedings in bankruptcy or pursuant to any other debtor relief laws filed by Seller or pending against Seller or the Property.

8. Neither the Property nor Seller are currently in violation of or subject to any existing, pending or threatened investigation or inquiry by any governmental authority or to any remedial obligations under any applicable federal, state or local laws, regulations or ordinances pertaining to health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Resource Conservation and Recovery Act of 1976. To Seller's knowledge, no underground storage tanks are located on or under the Property.

9. No commitments have been made by Seller to any governmental or quasi-governmental authority, utility company, utility district, school board, church or other religious body, homeowners or property owners association, or to any other individual, entity, organization or group relating to the Property or any part thereof which would impose an obligation upon the Purchaser, or its successors or assigns, to make any contribution or dedication of money or land, or to construct, install or maintain any improvements of a public or private nature on or off of the Property or any part thereof.

10. Any loan secured by a deed of trust, mortgage, or any other security instrument attached to the Property is only secured by the Property, and is not cross-defaulted or cross-collateralized with any other loan or property.

11. Seller has not breached any covenants of Seller under Section 8.c. of this Contract, subject to all materiality qualifiers contained in such covenants.

The continued validity in all respects of the representations, warranties and covenants set forth in the above paragraph, both at the time same are made and as of the Closing, shall be a condition precedent to Purchaser's obligations hereunder. All representations and warranties contained of Seller contained in this Section 8 shall be deemed remade as of the date of Closing and shall survive the Closing.

b. **PURCHASER IS TAKING THE PROPERTY "AS-IS" WITH ANY AND ALL LATENT AND PATENT DEFECTS. PURCHASER ACKNOWLEDGES THAT, EXCEPT AS SET FORTH OTHERWISE HEREIN AND IN THE CLOSING DOCUMENTS, IT IS NOT RELYING UPON THE ACCURACY OR COMPLETENESS OF ANY REPRESENTATION, RENDERING, PROMISE, ASSERTION, OR INFORMATION WITH RESPECT TO THE PROPERTY MADE OR FURNISHED BY OR ON BEHALF OF, OR OTHERWISE ATTRIBUTED TO, SELLER OR ANY OF ITS AGENTS, EMPLOYEES OR REPRESENTATIVES, ANY AND ALL SUCH RELIANCE BEING HEREBY DISCLAIMED. PURCHASER TAKES THE PROPERTY WITH NO EXPRESS OR IMPLIED WARRANTIES (EXCEPT FOR THE WARRANTY OF TITLE IN THE DEED AND THE SELLER'S EXPRESS REPRESENTATIONS). THIS PROVISION PLAYED AN IMPORTANT PART IN THE BARGAINING PROCESS FOR THIS CONTRACT. PURCHASER HAS AGREED TO DISCLAIM RELIANCE ON SELLER WITH FULL AWARENESS THAT THE PROPERTY'S PRIOR USE OR OTHER MATTERS COULD AFFECT ITS CONDITION, VALUE, SUITABILITY OR FITNESS. For the avoidance of doubt, nothing in this Section 8b. shall affect, abridge, impair, modify or limit the Seller's Express Representations or any rights of Purchaser in the event of a breach thereof.**

c. Between the Effective Date of this Contract and Closing, Seller shall:

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

1. Not enter into any leases or other agreements granting any person or entity the right to use or occupy any part of the Property (including any Improvements thereon), or enter into any other contract which will affect the Property or any portion thereof and survive the Closing.

2. Cause to be paid all trade accounts and costs and expenses of operation and maintenance of the Property incurred or attributable in a period prior to the Closing, and Seller agrees to indemnify and hold Purchaser harmless from all such costs and expenses.

3. Cooperate (at no cost to Seller other than nominal costs) with Purchaser in connection with Purchaser's examination of the Property including, without limitation, executing such agreements, applications, forms and requests as may be reasonably required from the owners of the Property in connection with Purchaser's submittals to governmental authorities and providers of utilities as is necessary to permit use of the Land for Purchaser's intended use and/or development of the Land, including the Rezone.

4. Not further encumber or permit encumbrance of the Property in any manner including, the conveyance of any portion of the Property or any material interest therein. In the event Seller encumbers or permits encumbrance of the Property in contravention of this subparagraph, or in the event Seller fails or refuses to pay and satisfy any liens affecting the Property as of the Effective Date at or prior to Closing, Purchaser may elect to consummate the transactions contemplated hereunder and deduct the amount of such encumbrance from the Purchase Price.

5. Not consent to any change in the zoning or other status of the Property, including, without limitation, annexation into a special district or into a municipality.

6. Not excavate, or permit the excavation of, the Land or cause or permit any deposit of soil or refuse or debris of any kind, nor cause or permit any waste upon or to the Land or any other portion of the Property.

7. Maintain the Property in accordance with all applicable laws, regulations, and ordinances.

8. Promptly deliver to Purchaser copies of any Submission Materials that Seller receives after the Effective Date.

9. Not market the Property, enter into any contract to sell all or a portion of the Property, or otherwise solicit or accept offers for the purchase, lease or development of the Property from any parties other than Purchaser or its assigns.

10. Cooperate (at no cost to Seller other than nominal costs) with Purchaser in obtaining estoppel certificates relating to any documents disclosed in the Commitment.

11. Not take any action that would cause any of the representations and warranties in <u>Section 8</u> hereof to become untrue.

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**Section 9.** Default.

a. If Purchaser fails to consummate the purchase of the Property as and when required to do so in accordance with this Contract and same is not due to a Seller default hereunder, and such failure by Purchaser continues for a period of ten (10) days after written notice thereof from Seller (provided that Purchaser shall be given no written notice and opportunity to cure if such failure relates to Purchaser's failure to perform at Closing), then Seller shall have the right, as Seller's sole and exclusive remedy, to terminate this Contract by giving written notice thereof to Purchaser and Title Company at or prior to Closing, in which case neither party hereto shall have any further rights or obligations hereunder, and the Title Company shall deliver the Earnest Money to Seller as liquidated damages, free of any claims by Purchaser or any other person with respect thereto, the parties hereby agreeing that actual damages in the event of Purchaser's failure to perform would be difficult or impossible to determine accurately.

b. If Seller fails to meet, comply with or perform any of Seller's covenants, agreements or obligations hereunder within the time limits and in the manner required either prior to or at Closing for any reason other than the termination of this Contract by Seller pursuant to a right to so terminate expressly set forth in this Contract or Purchaser's failure to perform its obligations under this Contract, or if any of Seller's Express Representations are untrue or inaccurate in any material respect and such failure continues for a period of ten (10) days following written notice thereof from Purchaser (provided that Seller shall be given no written notice and opportunity to cure if such failure relates to Seller's failure to perform at Closing), then Purchaser shall have the right, as Purchaser's sole and exclusive remedies, to either (i) terminate this Contract by giving written notice thereof to Seller and Title Company at or prior to Closing, or (ii) enforce specific performance of Seller's obligations under this Contract. If a court of competent jurisdiction does not issue an order of specific performance because Seller has conveyed the Property, any part thereof, or any material interest in the Property after the Effective Date or for similar reasons, then in that event Purchaser shall also have the right to seek and obtain damages from Seller. Additionally, if at Closing a Seller default has occurred and is continuing, then Purchaser, at its election, may extend Closing to the date that is the fifth (5th) business day after Seller cures such Seller default or Purchaser waives such Seller default, by giving written notice of such election to Seller. Subject to Section 9c hereof, if Purchaser terminates this Contract pursuant to this Section 9b, then neither party hereto shall have any further rights or obligations hereunder, and all Earnest Money shall be fully refunded to Purchaser, free of any claims by Seller or any other person with respect thereto.

c. If Purchaser terminates this Contract under Section 9b due to an Intentional Seller Default or Seller is no longer vested with title to the Property due to a lender unaffiliated with Purchaser foreclosing on the Property, then, in addition to Purchaser's remedies under Section 9b hereof, Seller shall reimburse Purchaser an amount equal to Purchaser's Costs not to exceed $500,000 no later than fifteen (15) days after Purchaser delivers a demand therefor to Seller. As used herein, the term "***Purchaser's Costs***" means all costs and expenses incurred by Purchaser in connection with this Contract, including, without limitation, due diligence costs, lender commitment fees and design costs for Purchaser's proposed improvements. "***Intentional Seller Default***" means Seller fails to perform its closing obligations under Section 7 hereof in any material respect, Seller breaches its covenants under Section 8 hereof in any material respect, any representation or warranty of Seller under Section 8 hereof was knowingly untrue in any material respect when made, or Seller's actions or omissions cause any representation and warranty of


EXHIBIT 1

Seller under Section 8 hereof to become untrue in any material respect after the Effective Date and prior to Closing.

d. The provisions of this Section 9 shall survive the termination of this Contract; provided, that, nothing herein shall limit or affect the rights of Purchaser, or the liabilities of Seller, with respect to claims asserted by Purchaser against Seller after Closing for breaches of Seller's Express Representations.

**Section 10.** Real Estate Commissions.

Purchaser represents and warrants to Seller that it has not dealt with any person or entity entitled to a brokerage commission, finder's fee or other compensation with respect to the transaction contemplated hereby. Seller represents and warrants to Purchaser that it has not dealt with any person or entity entitled to a brokerage commission, finder's fee or other compensation with respect to the transaction contemplated hereby. Purchaser hereby agrees to indemnify, defend, and hold Seller harmless from and against any losses, damages, costs and expenses (including, but not limited to, attorneys' fees and costs) incurred by Seller by reason of any breach or inaccuracy of the Purchaser's representations and warranties contained in this Section. Seller hereby agrees to indemnify, defend, and hold Purchaser harmless from and against any losses, damages, costs and expenses (including, but not limited to, attorneys' fees and costs) incurred by Purchaser by reason of any breach or inaccuracy of Seller's representations and warranties contained in this Section. Seller and Purchaser agree that it is their specific intent that no broker shall be a party to or a third-party beneficiary of this Contract, that no broker shall have any rights or cause of action hereunder, and further that the consent of a broker shall not be necessary to any agreement, amendment, or document with respect to the transaction contemplated by this Contract. The provisions of this Section shall survive the Closing and/or termination of this Contract.

**Section 11.** Condemnation. If prior to Closing the Property or any part thereof becomes subject to or is threatened with a taking by virtue of eminent domain to any extent whatsoever (for purposes hereof, a "threat" shall include, without limitation, a request by a surveyor or other person for access to the Land on behalf of any entity with the power of eminent domain), Purchaser shall have the option to terminate this Contract or to proceed with the Closing. If Purchaser elects to terminate this Contract, all Earnest Money shall be returned to Purchaser free of any claim by Seller and neither party hereto shall have any further rights, duties, or obligations one to the other hereunder. If Purchaser elects to proceed with the Closing, Seller shall assign to Purchaser at Closing all of Seller's rights in any condemnation proceeds with respect thereto and, to the extent any such proceeds are paid to Seller prior to Closing, Seller shall provide to Purchaser at Closing a credit against the Purchase Price therefor (it being agreed and intended that any and all proceeds paid or payable from or in relation to the condemnation shall belong to Purchaser). Seller agrees to immediately notify Purchaser of any eminent domain proceedings pending (or threat thereof) and not to settle or compromise any award therefor (or make a conveyance in lieu thereof) without Purchaser's prior written approval.

**Section 12.** No Assumption of Seller's Liabilities. Purchaser is acquiring only the Property from Seller and is not the successor of Seller. Purchaser does not assume or agree to pay, or indemnify Seller or any other person or entity against, any liability, obligation or expense of Seller or relating to the Property in any way except only to the extent, if any, herein expressly and specifically provided.

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**Section 13.** Time of Essence; Business Day. Time is of the essence with respect to each and every matter pertaining to performance under this Contract. If, however, the last day of any time period stated herein, or the date upon which any act is to be taken by a party hereto, shall fall on a day that is not a business day, then the duration of such time period or the date for performance of such act, shall be extended so that it shall end on the next succeeding day which is a business day. The term "***business day***" as used herein means any day other than Saturday, Sunday or a legal holiday observed by banks in the State of Texas.

**Section 14.** Waiver. Purchaser shall be entitled to waive any defect in title or other condition of this Contract and thereupon close the sale and purchase hereunder despite such defect or failure.

**Section 15.** Notice.

a. Any notice required or permitted to be given hereunder by one party to the other shall be in writing and the same shall be given and shall be deemed to have been served and given upon the first to occur of (i) delivery in person or by email transmission to the address set forth hereinbelow for the party to whom the notice is given; (ii) three (3) days after placing in the United States mail by certified mail and delivered to the address hereinafter specified; or (iii) one (1) day after deposit into the custody of a nationally recognized overnight courier to be sent by overnight delivery, addressed to such party at the address hereinafter specified.

b. The address of Seller for all purposes under this Contract and for all notices hereunder shall be:

c/o Terra Carta Partners LLC
1007 North Orange Street, 4th Floor
Unit 65
Wilmington, Delaware 19801
Attention: Ryan Cicoski
Email: rcicoski@terracartapartners.com

With copy to:

Mack Law Group
1363 Shermer Road, Suite 210
Northbrook, Illinois 60062
Attn: Charles Mack
T: (847) 239-7212
Email: charles@mlgcounsel.net

c. The address of Purchaser for all purposes under this Contract and for all notices hereunder shall be:

Endeavor Real Estate Group
500 W. 5th Street, Suite 700
Austin, Texas 78701
Attn: Jeff Newberg and Ben Bufkin
T: (512) 682-5500
F: (512) 682-5505
Email: jnewberg@endeavor-re.com
bbufkin@endeavor-re.com

With a copy to:

Metcalfe Wolff Stuart & Williams, LLP
221 W. 6th Street, Suite 1300
Austin, Texas 78701
Attn: Ari Kuchinsky and David Wolff
T: (512) 404-2238
F: (512) 404-2245
Email: akuchinsky@mwswtexas.com
dwolff@mwswtexas.com

d. From time to time either party may designate another address within the United States of America for all purposes of this Contract by giving the other party not less than ten (10) days advance written notice of such change of address in accordance with the provisions hereof.

**Section 16.** Survival. The representations, warranties and covenants described in this Contract as surviving Closing and those requiring observance or performance after Closing shall survive Closing.

**Section 17.** Construction. The parties acknowledge that each party and its counsel have reviewed and revised this Contract and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Contract or any amendments or exhibits hereto.

**Section 18.** Entire Agreement. This Contract contains the entire agreement between Seller and Purchaser, and no oral statements or prior written matters not specifically incorporated herein shall be of any force or effect. No variation, modification or changes hereof shall be binding on either party hereto unless set forth in a document executed by such parties or a duly authorized agent, officer or representative thereof.

**Section 19.** Exhibits. All references to Exhibits contained herein are references to Exhibits attached hereto, all of which are made a part hereof for all purposes the same as if set forth herein verbatim, it being expressly understood that if any Exhibit attached hereto which is to be executed and delivered at Closing contains blanks, the same shall be completed correctly and in accordance with the terms and provisions contained herein and as contemplated herein prior to or at the time of execution and delivery thereof.

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**Section 20.** Parties Bound. This Contract shall be binding upon and inure to the benefit of Purchaser and Seller and their respective heirs, personal representatives, successors and assigns. Purchaser shall have the right to assign this Contract to any entity in which Purchaser or any owner of a direct or indirect interest in Purchaser owns (or any affiliates of such owner), directly or indirectly, an interest. Upon such assignment and assumption hereof by the assignee, Purchaser shall be released from its liabilities and obligations hereunder.

**Section 21.** Attorney's Fees. If it shall be necessary for either Purchaser or Seller to employ an attorney to enforce its rights pursuant to this Contract because of the default of the other party, the defaulting party shall reimburse the non-defaulting party for reasonable attorney's fees.

**Section 22.** Further Acts. In addition to the acts recited in this Contract to be performed by Seller and Purchaser, Seller and Purchaser agree to perform or cause to be performed at the Closing or after the Closing any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby.

**Section 23.** Governing Law; Venue. This Contract shall be governed and construed by the laws of the State of Texas. All obligations herein shall be performable in Williamson County, Texas. The parties hereby stipulate and agree that any suit or proceeding brought to enforce any obligation or covenant under this Contract shall be brought exclusively in Williamson County, Texas, it being stipulated and agreed that such County is the exclusive County for venue for any such suit or proceeding.

**Section 24.** Miscellaneous. Whenever the context of this Contract so requires, the singular shall include the plural, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include all other genders. All terms defined in this Contract shall have such defined meanings when used herein. The paragraph headings contained herein are for convenience and reference only and are not intended to define or limit the scope of any provision of this Contract. The provisions of this Contract shall be deemed independent and severable, and the invalidity or partial invalidity or unenforceability of any one provision or portion thereof shall not affect the validity or enforceability of any other provision hereof.

**Section 25.** Effective Date. The "***Effective Date***" of this Contract shall be the date set forth below the signature of the Title Company on the page below titled "Receipt of Contract".

**Section 26.** Executed Copies. This instrument may be executed in any number of counterpart copies and may be executed by scanned and emailed signature or by DocuSign or similar electronic signature, each of which counterparts shall be deemed an original for all purposes.

**Section 27.** Like Kind Exchange. At the request of either Seller or Purchaser, each party shall reasonably cooperate with the other party's efforts to consummate the sale pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended; provided, that (a) in no event shall Purchaser be required to accept title to any property other than the Property, (b) in no event shall the Closing be delayed, (c) neither party shall be obligated to incur any material expenses in connection with such cooperation, and (d) neither party shall be obligated to release the requesting party from any of such requesting party's obligations under this Contract or to amend this Contract.



**EXHIBIT 1**

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**Section 28.** Memorandum of Contract. Purchaser may not record a memorandum of this Contract until after the expiration of the Inspection Period. Purchaser agrees that if it records a memorandum of this Contract to put third parties on notice of its rights hereunder, that it shall promptly record a release thereof in the event this Contract is terminated.

**Section 29.** Confidentiality. Seller and Purchaser shall each keep the material terms of this Contract confidential, except (a) to the extent disclosure is required in connection with a legal action between Seller and Purchaser, (b) by law or court order, (c) or disclosure or use is necessary to enable third parties to advise or assist Purchaser or Seller with respect to the transaction contemplated by this Contract, (d) or is otherwise reasonably necessary in connection with Purchaser's pursuant of any approvals, consents, due diligence, permits, or other matters in connection with Purchaser's intended development, or (e) Seller or Purchaser may disclose such to its agents, lenders, and attorneys in connection with this Contract. This provision will survive Closing or termination of this Contract for a period of six (6) months. This provision shall not be deemed to prohibit either party from disclosing any information that is publicly available through no fault of such party. Notwithstanding the foregoing, Seller and Purchaser shall have the right to disclose the fact that it has entered into this Contract with the other party to their respective investors, contractors, professionals and related individuals that each party, in its sole discretion, deems to have a "need to know".

**Section 30.** Earnout. Upon the earliest of (i) December 31, 2025, (ii) Purchaser obtaining PUD rezoning of the Land for a commercial and residential mixed use development, or (iii) Purchaser selling all or portions of the Property for a combined sales price in excess of [redacted] Purchaser shall pay to Seller, as an addition to the Purchase Price, the amount of [redacted] Additionally, Purchaser shall pay to Seller, as an addition to the Purchase Price [redacted] no later than December 31, 2026, and (y) [redacted] (the "***Final Earnout Amount***") no later than December 31, 2027. The Initial Earnout Amount, the Second Earnout Amount and the Final Earnout Amount are herein collectively called the "***Earnout Amount***". Seller waives any express or implied vendor's lien with respect to this Section 30, and Seller is not retaining a vendor's lien with respect to the Property. This Section 30 shall survive Closing.

**Section 31.** Development Agreement.

a. Reference is made to that certain Development Agreement between Purchaser, as Developer, and Terra Carta Partners LLC, a Delaware limited liability company ("***Terra Carta***"), an affiliate of Seller, as Owner (the "***Development Agreement***"). The Development Agreement is hereby terminated in all respects. Furthermore, Seller, Purchaser, and Terra Carta each release each other from any claims, liabilities, or damages relating to the Development Agreement. For the avoidance of any doubt, Seller acknowledges and agrees that Purchaser may market portions of the Property for sale or lease, and that Purchaser may market (and ultimately sell the Property after Closing) the Property to any party of its choosing, and that Purchaser will not be bound by the Development Agreement or any duties thereunder. In entering into this Contract, Seller and Purchaser represent and warrant to each other that they have not relied on the Development Agreement or any of the agreements or communications thereunder or relating thereto in entering into this Contract. At Closing, Terra Carta, Seller and its affiliated or related entities and

individuals will execute an unconditional release and waiver of claims in a form required by Purchaser further releasing all claims against Purchaser and its affiliates and principals relating to the Development Agreement and/or the Property in any way, except rights under this Contract that survive Closing.

b. Seller acknowledges and agrees that Purchaser intends to use all or a portion of the Consultant Work Product, work with some or all of the consultants that have prepared the same, and maintain positive relationships with consultants that have prepared the Consultant Work Product. Accordingly, it is critical to Purchaser that such consultants are paid for all work performed through the Effective Date in order for Purchaser to continue its relationship with such consultants after the Effective Date. Seller agrees that it will pay such consultants for all work performed through the Effective Date no later than thirty (30) days after Seller is invoiced for such work. If Seller fails to pay such consultants within thirty (30) days after being invoiced and such amounts owed become delinquent, Purchaser may, at its election (with no obligation to do so), pay such delinquent sums and such delinquent amounts paid by Purchaser shall accrue interest at a rate of 18% per annum until Seller reimburses Purchaser for such delinquent sums paid by Purchaser plus accrued interest ("***Delinquent Sums***"). If at Closing there are Delinquent Sums that have not been reimbursed to Purchaser, then Purchaser shall receive a credit against the Purchase Price (including the Earnout Amount) equal to the Delinquent Sums (which includes all accrued interest) multiplied by two. If Purchaser terminates this Contract under any termination right provided herein, Seller shall reimburse Purchaser all Delinquent Sums, which obligation of Seller shall survive the termination of this Contract.

*[End of Page; See Following Page for Signatures]*

The parties have duly executed this instrument to be effective as of the Effective Date.

**SELLER:**

**HIGH RIDGE DEVELOPMENT LLC,**
a Delaware limited liability company

By: DocuSigned by: Ryan Cicoski BBB604305F114FB...
Name: Ryan C. Cicoski
Title: Manager

**HIGH RIDGE DEVELOPMENT II LLC,**
a Delaware limited liability company

By: DocuSigned by: Ryan Cicoski BBB604305F114FB...
Name: Ryan C. Cicoski
Title: Manager

**HIGH RIDGE DEVELOPMENT III LLC,**
a Delaware limited liability company

By: DocuSigned by: Ryan Cicoski BBB604305F114FB...
Name: Ryan C. Cicoski
Title: Manager

**PURCHASER:**

**CERCO DEVELOPMENT, INC.,**
a Texas corporation

By: DocuSigned by: Jeff Newberg 4ADEFEADD09C479...
Name: Jeff Newberg
Title: EVP

*[Signatures Continue on Following Page]*



**EXHIBIT 1**

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

The undersigned hereby executes this Contract for the purpose of acknowledging the provisions of Section 31.

**TERRA CARTA:**

**TERRA CARTA PARTNERS LLC,**
a Delaware limited liability company

DocuSigned by:
By: Ryan Cicoski
BBB604305F114FB...
Name: Ryan C. Cicoski
Title: Vice President

Exhibits
A – Description/Depiction of the Land
B – Form of Deed

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

RECEIPT OF CONTRACT

A fully executed counterpart of this Contract was received by me on this _____ day of November, 2023, which date is defined in Section 25 above as the "Effective Date".

**HERITAGE TITLE COMPANY OF AUSTIN, INC.**

By: ______________________________________
Name:_____________________________________
Title:______________________________________

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

EXHIBIT A to Earnest Money Contract

Legal Description and Depiction of the Land

Approximately 334 acres of land as outlined below, and being more particularly described as:

**PARCEL A**:

TRACT 1: A 25.00 acre tract of land, out of the Washington Anderson Survey, Abstract 15, Williamson County, Texas, and being more particularly described by metes and bounds in the Exhibit "A" attached to Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas, SAVE AND EXCEPT the portions conveyed to the City of Cedar Park by Document No. 2022106874 of the Official Public Records of Williamson County, Texas.

TRACT 2: A 25.01 acre tract of land, out of the Washington Anderson Survey, Abstract 15, Williamson County, Texas, and being more particularly described by metes and bounds in the Exhibit "B" attached to Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas, SAVE AND EXCEPT the portions conveyed to the City of Cedar Park by Document No. 2022106874 of the Official Public Records of Williamson County, Texas.

TRACT 3: A 25 acre tract of land, out of the Washington Anderson Survey, Abstract 15 and a part of the John Dillard Survey, Abstract 179, Williamson County, Texas, and being more particularly described as Tract Three in Warranty Deed filed in Document No. 199957924 of the Official Public Records of Williamson County, Texas, SAVE AND EXCEPT the portions conveyed to the City of Cedar Park by Document No. 2022106874 of the Official Public Records of Williamson County, Texas.

TRACT 4: Easement Estate created by that certain Joint Use Access Easement dated December 12, 2014, recorded under Document No. 2015003168 of the Official Public Records of Williamson County, Texas, over and across a portion of Lot 2, Block A, RAINBOW HEIGHTS FINAL PLAT, a subdivision in Williamson County, Texas, according to the map or plat thereof, recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, said tract being more particularly described on Exhibit "A" of said Joint Use Access Easement.

**PARCEL B**:

Lot(s) 1 and 2, Block A, RAINBOW HEIGHTS FINAL PLAT, a subdivision in Williamson County, Texas, according to the map or plat thereof, recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, SAVE AND EXCEPT the portions conveyed to the City of Cedar Park by Document No. 2022106872 of the Official Public Records of Williamson County, Texas.

**PARCEL C**:

Being all of that certain tract of land situated in the John D. Anderson Survey, Abstract No. 16, City of Cedar Park, Williamson County, Texas, and being all of three tracts of land (Tract 1, Tract 2 and Tract 3), as described in deed to Russell Austin Burleson recorded under Document No. 9813732, Official Records, Williamson County, Texas, (O.R.W.C.T.), and all of the same tract of land as described in deed to Russell Burleson, recorded under Document No. 2013049910, Official Public Records, Williamson County, Texas (O.P.R.W.C.T.), and being more particularly described by metes and bounds attached hereto and made a part hereof, SAVE AND EXCEPT the portions conveyed to the City of Cedar Park by Document No. 2022106873 of the Official Public Records of Williamson County, Texas.


EXHIBIT 1

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

**PROPERTY DESCRIPTION**

**STATE OF TEXAS §**
**COUNTY OF WILLIAMSON §**

BEING a tract of land situated in the J.D. ANDERSON SURVEY, ABSTRACT NO. 16, City of Cedar Park, Williamson County, Texas and being all of three tracts of land (Tract 1, Tract 2 and Tract 3), as described in deed to Russell Austin Burleson, recorded in County Clerk's File No. ~~1999013732, Deed Records~~ 9913732, Official Records, Williamson County, Texas ~~(D.R.W.C.T.)~~ (O.R.W.C.T.), and all of the same tract of land as described in deed to Russell Burleson, recorded in County Clerk's File No. 2013049910, ~~D.R.W.C.T.~~ Official Public Records, Williamson County, Texas (O.P.R.W.C.T.), and being more particularly described as follows:

BEGINNING at a point for corner from which a 1/2-inch iron rod found bears South 18 deg 56 min 34 sec East, a distance of 0.29 feet, said point being the Southwesterly corner of Stonehurst Addition, an addition to the City of Cedar Park, Williamson County, Texas, according to the plat thereof recorded in Cabinet C, Slide 251, Plat Records, Williamson County, Texas (P.R.W.C.T.) and being situated in the Northwesterly line of a tract of land as described in deed to The WhiteStone Boulevard, Ltd., recorded in County Clerk's File No. 2016090221, D.R.W.C.T.;

THENCE South 69 deg 41 min 13 sec West, a distance of 3,121.05 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the most Westerly, Southwest corner of said Russell Austin Burleson tract (Tract 3);

THENCE North 32 deg 36 min 47 sec West, a distance of 22.44 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being a Southeast corner of said Russell Burleson tract;

THENCE along the Southerly, Westerly and Northerly lines of said Russell Burleson tract, the following:

South 63 deg 43 min 39 sec West, a distance of 151.19 feet to a 1/2-inch iron rod found for corner;

South 64 deg 44 min 44 sec West, a distance of 78.59 feet to a 1/2-inch iron rod found for corner;

North 03 deg 13 min 04 sec East, a distance of 30.47 feet to a 1/2-inch iron rod found for corner;

North 20 deg 28 min 33 sec West, a distance of 129.82 feet to a point for corner from which a 1/2-inch iron rod found bears North 23 deg 24 min 04 sec West, a distance of 0.43 feet;

North 24 deg 35 min 18 sec East, a distance of 248.04 feet to a point for corner from which a 1/2-inch iron rod found bears South 33 deg 24 min 30 sec West, a distance of 0.22 feet;

North 44 deg 16 min 54 sec West, a distance of 123.26 feet to a 1/2-inch iron rod found for corner;

North 38 deg 49 min 09 sec East, a distance of 34.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

South 87 deg 43 min 29 sec East, a distance of 33.12 feet to a 60d nail, in an elm tree, found for corner;

South 66 deg 38 min 50 sec East, a distance of 18.77 feet to a 60d nail, in an oak tree, found for corner;

North 60 deg 34 min 28 sec East, a distance of 77.41 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

North 17 deg 53 min 02 sec East, a distance of 32.61 feet to a point for corner from which a 60d nail, in a cedar tree, bears South 68 deg 53 min 45 sec East, a distance of 0.67 feet;

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

North 27 deg 08 min 02 sec East, a distance of 29.54 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

North 39 deg 10 min 17 sec East, a distance of 21.21 feet to a point for corner, from which a 60d nail found, in a cedar tree, bears North 31 deg 41 min 38 sec East, a distance of 0.27 feet;

North 22 deg 16 min 06 sec East, a distance of 42.89 feet to a point for corner, from which a 60d nail found, in an elm tree, bears South 05 deg 42 min 15 sec East, a distance of 0.25 feet;

North 14 deg 35 min 25 sec East, a distance of 40.25 feet to a 60d nail, in an elm tree, found for corner;

North 48 deg 46 min 04 sec East, a distance of 15.92 feet to a point for corner from which a 60d nail, in an elm tree, found bears North 51 deg 29 min 29 sec West, a distance of 0.42 feet;

North 63 deg 39 min 44 sec East, a distance of 23.16 feet to a 60d nail, in an elm tree, found for corner;

North 20 deg 25 min 19 sec East, a distance of 12.22 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

North 64 deg 45 min 25 sec East, a distance of 48.77 feet to a point for corner, from which a 60d nail, in an elm tree, found bears South 37 deg 58 min 34 sec West, a distance of 0.27 feet;

South 71 deg 26 min 21 sec East, a distance of 37.59 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

South 71 deg 33 min 57 sec East, a distance of 33.19 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

North 80 deg 32 min 22 sec East, a distance of 78.12 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner;

South 65 deg 30 min 38 sec East, a distance of 61.13 feet to a point for corner from which a 60d nail, in a cedar tree, found bears South 51 deg 41 min 50 sec East, a distance of 0.32 feet, said point being situated in the Southwesterly line of said Russell Austin Burleson tract (Tract 3);

THENCE North 20 deg 34 min 08 sec West, along said Southwesterly line, a distance of 2,368.00 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the most Westerly corner of said Russell Austin Burleson tract (Tract 2);

THENCE North 45 deg 35 min 46 sec East, departing the Westerly line and along the Northerly line of said Russell Austin Burleson tract (Tract 2), a distance of 1,768.38 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being situated in the Southerly line of Lot 2, of Stonehurst Addition, an addition to the city of Cedar Park, Williamson County, Texas, according to the plat thereof recorded in Cabinet C, Slide 251, P.R.W.C.T.;

THENCE along a Southerly and Westerly line of said Stonehurst Addition, the following:

North 69 deg 26 min 41 sec East, a distance of 352.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southeasterly corner of said Lot 2 and the Southwest corner of Lot 3;

North 68 deg 30 min 41 sec East, a distance of 367.09 feet to a 1/2-inch iron rod found for corner, said iron rod being the Southeasterly corner of said Lot 3 and the Southwesterly corner of Lot 4;

North 68 deg 37 min 41 sec East, a distance of 285.50 feet to a point for corner from which a 1/2-inch iron rod found bears North 44 deg 16 min 03 sec East, a distance of 0.26 feet, said point being the Southeasterly corner of said Lot 4 and a Southwesterly corner of Lot 6;

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

North 68 deg 30 min 41 sec East, a distance of 112.34 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being an inner ell corner of said Lot 6;

South 20 deg 59 min 19 sec East, a distance of 213.63 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being a Southwesterly corner of said Lot 6 and the Northwesterly corner of Lot 7;

South 19 deg 13 min 19 sec East, a distance of 233.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being a point of intersection, for said Lot 7;

South 17 deg 15 min 41 sec West, a distance of 113.80 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being a point of intersection, for said Lot 7;

South 21 deg 00 min 19 sec East, a distance of 357.23 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 7 and the Northwesterly corner of Lot 8;

South 20 deg 52 min 19 sec East, a distance of 636.07 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 8 and the Northwesterly corner of Lot 9;

South 21 deg 04 min 19 sec East, a distance of 402.95 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of Lot 9 and the Northwesterly corner of Lot 10;

South 21 deg 13 min 19 sec East, a distance of 278.82 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 10 and the Northwesterly corner of Lot 11;

South 20 deg 34 min 19 sec East, a distance of 279.09 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 11 and the Northwesterly corner of Lot 12;

South 21 deg 07 min 19 sec East, a distance of 279.68 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 12 and the Northwesterly corner of Lot 13;

South 21 deg 13 min 19 sec East, a distance of 282.03 feet to a point for corner from which a 5/8-inch iron rod found bears South 59 deg 43 min 34 sec East, a distance of 0.60 feet, said point being the Southwesterly corner of said Lot 13 and the Northwesterly corner of Lot 14;

South 21 deg 01 min 19 sec East, a distance of 284.73 feet to a 1/2-inch iron rod with red plastic cap stamped "W.A.I. 5714" set for corner, said iron rod being the Southwesterly corner of said Lot 14 and the Northwesterly corner of Lot 15;

South 21 deg 08 min 19 sec East, a distance of 278.43 feet to the POINT OF BEGINNING.

CONTAINING within these metes and bounds 214.803 acres or 9,356,812 square feet of land, more or less.

Bearings shown hereon are based upon an on-the-ground Survey performed in the field on the 7th day of August, 2020, utilizing a G.P.S. bearing related to the Texas Coordinate System, North Texas Central Zone (4202), NAD 83, grid values from the GeoShack VRS network.

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

Depiction of Land:





**EXHIBIT 1**

EXHIBIT B to Earnest Money Contract

Form of Special Warranty Deed

**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WILLIAMSON | § | |

_______________________________ ("Grantor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to it in hand paid and caused to be paid by _______________________, a _______________________ ("Grantee"), whose address is 500 W 5th Street, Suite 700, Austin, TX 78701, the receipt and sufficiency of which is hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD, ASSIGNED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, ASSIGN and CONVEY, unto Grantee:

The real property located in Williamson County, Texas and more particularly described in Exhibit A attached hereto and made a part hereof for all purposes and any and all structures, fixtures, and improvements situated thereon (collectively, the "Land"); together with all of Grantor's right, title and interest in and to the following: (i) all strips and gores between the Land and abutting properties, (ii) all rights in and to easements, air rights, development rights, and drainage rights incidental to the such Land including, without limitation, all development approvals or rights in respect thereto, and (iii) any and all reversionary interests in and to, and all of Grantor's rights to use, any of the foregoing (clauses (i) through (iii) above being herein collectively called the "Rights and Appurtenances" and the Land and the Rights and Appurtenances being herein collectively called the "Real Property").

TO HAVE AND TO HOLD the Real Property, together with all and singular any other rights and appurtenances thereto in anywise belonging, unto Grantee, its successors and assigns, FOREVER; and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the Real Property unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

The warranty of Grantor made herein is made subject only to the matters listed on Exhibit B attached hereto and incorporated herein to the extent, but no further, that the same are valid and subsisting as of the date hereof and affect title to the Real Property.

*[End of Page; See Following Page for Signatures]*

DocuSign Envelope ID: 1CAD24A1-B2C9-4DB6-9A5D-140ED54605A7

This instrument is executed effective as of the _____ day of ________, 20__.

[__________],
a [__________]

By:________________________________
Name:______________________________
Title:_______________________________

THE STATE OF _____________ §
§
COUNTY OF _______________ §

This instrument was acknowledged before me on the ___ day of _________________, 20__, by _______________________________, __________________________ of ______________________________________________________________________________ ____________________________________________________________________________.

___________________________________________
Notary Public in and for the
State of ____________________________________
Printed Name:______________________________

My Commission Expires:____________________

<u>Exhibit A</u> - Land
<u>Exhibit B</u> - Permitted Exceptions

# FIRST AMENDMENT TO EARNEST MONEY CONTRACT

THIS FIRST AMENDMENT TO EARNEST MONEY CONTRACT (this "*Amendment*") is made to be effective as of January 11, 2024, by and between **HIGH RIDGE DEVELOPMENT LLC, HIGH RIDGE DEVELOPMENT II LLC,** and **HIGH RIDGE DEVELOPMENT III LLC**, each, a Delaware limited liability company ("*Seller*"), and **OP III ATX HIGHRIDGE, LP**, a Texas limited partnership ("*Purchaser*") (Seller and Purchaser sometimes collectively referred to herein as the "*Parties*").

**Recitals**

A. Seller and Cerco Development, Inc., a Texas corporation, as predecessor-in-interest to Purchaser, entered into that certain Earnest Money Contract dated effective November 3, 2023 (the "*Agreement*"), for certain real property comprising approximately 334 acres, more or less, located in Williamson County, Texas, as more particularly described therein.

B. The Parties now desire to amend the Agreement as hereinafter set forth.

**Amendment**

For and in consideration of the promises and the mutual covenants and agreements hereinafter made, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1. **Earnout**. In consideration of Purchaser's affiliate waiving past due development fees owed to it under the Development Agreement, Purchaser paying accrued outstanding interest under the Property Loan through the Closing Date, and property tax prorations for 2023 and 2024 to be paid by Purchaser at Closing, the Initial Earnout Amount set forth in Section 30 of the Agreement is hereby reduced and amended to equal [redacted] This section shall survive Closing.

2. **Miscellaneous**.

a. Capitalized terms not defined herein shall have the meanings given in the Agreement.

b. All terms and conditions of the Agreement not expressly modified by this Amendment shall remain in full force and effect, and, in the event of any inconsistencies between this Amendment and the terms of the Agreement, the terms set forth in this Amendment shall govern and control. Except as expressly amended hereby, the Agreement shall remain in full force and effect as of the date thereof.

c. This Amendment may be executed in one or more counterparts which shall be construed together as one document. For purposes of the execution hereof, PDF signatures (including Docusign) may be treated as originals.



**EXHIBIT 2**

d. This Amendment (i) shall be binding upon and shall inure to the benefit of each of the Parties and their respective successors, assigns, receivers and trustees; (ii) may be modified or amended only by a written agreement executed by each of the Parties; and (iii) shall be governed by and construed in accordance with the laws of the State of Texas.

*(Signature Pages Follow)*

EXECUTED by the Parties to be effective as of the date first above written.

**SELLER:**

**HIGH RIDGE DEVELOPMENT LLC,**
a Delaware limited liability company

By: HRD Holdings LLC,
a Delaware limited liability company
its Sole Member

By: TCP MGR LLC,
a Delaware limited liability company
its Manager

By: Ryan C. Cicoski
Name: Ryan Cicoski
Title: Vice President

**HIGH RIDGE DEVELOPMENT II LLC,**
a Delaware limited liability company

By: TCP MGR LLC,
a Delaware limited liability company,
its Manager

By: Ryan C. Cicoski
Name: Ryan C. Cicoski
Title: Vice President

**HIGH RIDGE DEVELOPMENT III LLC,**
a Delaware limited liability company

By: TCP MGR LLC,
a Delaware limited liability company,
its Manager

By: Ryan C. Cicoski
Name: Ryan C. Cicoski
Title: Vice President

**PURCHASER:**

**OP III ATX HIGHRIDGE, LP,**
a Texas limited partnership

By: EOP III Sub GP, LLC,
a Delaware limited liability company,
its general partner

By: [signature]
Name: Ben Boflin
Title: EVP



**EXHIBIT 2**

ELECTRONICALLY RECORDED 2024003269
Williamson County, Texas Total Pages: 15

# SPECIAL WARRANTY DEED

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF WILLIAMSON §

**HIGH RIDGE DEVELOPMENT LLC**, a Delaware limited liability company, as to Parcel B and Tract 4 as more particularly described on Exhibit A attached hereto, **HIGH RIDGE DEVELOPMENT II LLC**, a Delaware limited liability company, as to Parcel C as more particularly described on Exhibit A attached hereto, and **HIGH RIDGE DEVELOPMENT III LLC**, a Delaware limited liability company as to Parcel A as more particularly described on Exhibit A attached hereto (collectively, "Grantor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to it in hand paid and caused to be paid by **OP III ATX HIGHRIDGE, LP**, a Texas limited partnership ("Grantee"), whose address is 500 W. 5th Street, Suite 700, Austin, TX 78701, the receipt and sufficiency of which is hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD, ASSIGNED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, ASSIGN and CONVEY, unto Grantee:

The real property located in Williamson County, Texas and more particularly described in Exhibit A attached hereto and made a part hereof for all purposes and any and all structures, fixtures, and improvements situated thereon (collectively, the "Land"); together with all of Grantor's right, title and interest in and to the following: (i) all strips and gores between the Land and abutting properties, (ii) all rights in and to easements, air rights, development rights, and drainage rights incidental to the such Land including, without limitation, all development approvals or rights in respect thereto, and (iii) any and all reversionary interests in and to, and all of Grantor's rights to use, any of the foregoing (clauses (i) through (iii) above being herein collectively called the "Rights and Appurtenances" and the Land and the Rights and Appurtenances being herein collectively called the "Real Property").

TO HAVE AND TO HOLD the Real Property, together with all and singular any other rights and appurtenances thereto in anywise belonging, unto Grantee, its successors and assigns, FOREVER; and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the Real Property unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

The warranty of Grantor made herein is made subject only to the matters listed on Exhibit B attached hereto and incorporated herein to the extent, but no further, that the same are valid and subsisting as of the date hereof and affect title to the Real Property.

*[End of Page; See Following Page for Signatures]*



**EXHIBIT 3**

This instrument is executed effective as of the 12th day of January, 2024.

**HIGH RIDGE DEVELOPMENT LLC,**
a Delaware limited liability company

By: HRD Holdings LLC,
a Delaware limited liability company
its Sole Member

By: TCP MGR LLC,
a Delaware limited liability company
its Manager

By: [signature]
Name: RYAN CICOSKI
Title: VICE PRESIDENT

**HIGH RIDGE DEVELOPMENT II LLC,**
a Delaware limited liability company

By: TCP MGR LLC,
a Delaware limited liability company,
its Manager

By: [signature]
Name: Ryan C. Cicoski
Title: Vice President

**HIGH RIDGE DEVELOPMENT III LLC,**
a Delaware limited liability company

By: TCP MGR LLC,
a Delaware limited liability company,
its Manager

By: [signature]
Name: Ryan C. Cicoski
Title: Vice President



**EXHIBIT 3**

THE STATE OF PENNSYLVANIA §
COUNTY OF CHESTER §
§

This instrument was acknowledged before me on the 11 day of January, 2024, by Ryan C. Cicoski, as Vice President of TCP MGR LLC, a Delaware limited liability, Manager of each of **HIGH RIDGE DEVELOPMENT II LLC,** and **HIGH RIDGE DEVELOPMENT III LLC,** each, a Delaware limited liability company, on behalf of each such limited liability company.

Commonwealth Of Pennsylvania - Notary Seal
Nygel R Randolph, Notary Public
Chester County
My Commission Expires February 17, 2025
Commission Number 1390793

[signature]
Notary Public in and for the
State of PENNSYLVANIA
Printed Name: Nygel Randolph

My Commission Expires: 02/17/2025

THE STATE OF PENNSYLVANIA §
COUNTY OF CHESTER §
§

This instrument was acknowledged before me on the 11 day of January, 2024, by Ryan C Cicoski, as Vice President of TCP MGR LLC, a Delaware limited liability company, Manager of HRD Holdings LLC, a Delaware limited liability company, Sole Member of **HIGH RIDGE DEVELOPMENT LLC**, a Delaware limited liability company, on behalf of each such limited liability company.

Commonwealth Of Pennsylvania - Notary Seal
Nygel R Randolph, Notary Public
Chester County
My Commission Expires February 17, 2025
Commission Number 1390793

[signature]
Notary Public in and for the
State of PENNSYLVANIA
Printed Name: Nygel Randolph

My Commission Expires: 02/17/2025

Exhibit A - Land
Exhibit B - Permitted Exceptions

# EXHIBIT A

## Land

**TRACT 4**: Easement Estate, for the benefit of Parcel A, created by that certain Joint Use Access Easement dated December 12, 2014, recorded under Document No. 2015003168 of the Official Public Records of Williamson County, Texas, over and across a portion of Lot 2, Block A, RAINBOW HEIGHTS FINAL PLAT, a subdivision in Williamson County, Texas, according to the map or plat thereof, recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, said tract being more particularly described on Exhibit "A" of said Joint Use Access Easement.

**PARCEL A**: Being all of that certain tract or parcel of land containing 73.136 acres, more or less, situated in the Washington Anderson Survey, Abstract No. 15, Williamson County, Texas, said tract being more particularly described by metes and bounds shown on Schedule 1 attached hereto and made a part hereof.

**PARCEL B**: Being all of that certain tract or parcel of land containing 48.270 acres, more or less, being portion of Lot(s) 1 and 2, Block A, RAINBOW HEIGHTS FINAL PLAT, a subdivision in Williamson County, Texas, according to the map or plat thereof, recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, said tract being more particularly described by metes and bounds shown on Schedule 2 attached hereto and made a part hereof.

**PARCEL C**: Being all of that certain tract or parcel of land containing 211.923 acres, more or less, situated in the J.D. Anderson Survey, Abstract No. 16, Williamson County, Texas, said tract being more particularly described by metes and bounds shown on Schedule 3 attached hereto and made a part hereof.



**EXHIBIT 3**

Schedule I

**PARCEL A**
**PROPERTY DESCRIPTION**

BEING a 73.136 acre (3,185,794 square feet) tract of land, situated in the Washington Anderson Survey, Abstract No.15, City of Cedar Park, Williamson County, Texas, out of Tracts 1-3 called to be 75.01 acres described in a Special Warranty Deed with Vendor's Lien to High Ridge development III, LLC. recorded in Doc. No. 2021184630 Official Public Records, Williamson County, Texas, and being more particularly described as follows:

COMMENCING at a 1/2" iron rod found in the north line of East Whitestone Blvd., RM 1431 (a 200' right-of-way) for the southwest corner of a called 126.36 acre tract described in Special Warranty Deed with Vendor's Lien to Indigo Ridge Development Partners, LLC. recorded in Doc. No. 2018008439 Official Public Records, Williamson County, Texas, the southeast corner of a called 49.987 acre tract described by a Plat of Rainbow Heights Subdivision, Lots 1-2, Block A, Cabinet AA, Slides 62-64 Plat Records, Williamson County, Texas;

THENCE along the north line of said East Whitestone Blvd., the south line of said Lots 1-2, the following three (3) calls:

1. South 69°00'11" West, 85.43 feet to a Brass Monument found at the beginning of a non-tangent curve to the left;
2. In a westerly direction, with said non-tangent curve to the left, an arc distance of 692.92 feet with a radius of 5,829.58 feet, a central angle of 06°48'37", and a chord bearing and distance of South 66°25'19" West, 692.52 feet to a 1/2" iron rod with plastic cap stamped "RPLS 6275" found for the southwest corner of said Lot 1, the southeast corner of said Lot 2 at the beginning of a non-tangent curve to the left;
3. In a westerly direction, with said non-tangent curve to the left, an arc distance of 50.31 feet, with a radius of 5,829.58 feet, a central angle of 0°29'40", and a chord bearing and distance of South 62°43'05" West, 50.31 feet to an "X" cut in concrete found for the southwest corner of said Lot 2, the southeast corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract, at the beginning of a non-tangent curve to the left;

THENCE continuing along the north line of said East Whitestone Blvd., the south line of said Tracts 1-3 and herein described tract, the following three (3) calls:

1. In a westerly direction, with said non-tangent curve to the left, an arc distance of 409.79 feet, with a radius of 5,829.58 feet, a central angle of 04°01'39", and a chord bearing and distance of South 60°27'25" West, 409.70 feet to a 1/2" iron rod with plastic cap stamped "CHAPARRAL" found for the southwest corner of said Tract 3, the southeast corner of said Tract 2, at the beginning of a non-tangent curve to the left;
2. In a westerly direction, with said non-tangent curve to the left, an arc distance of 402.03 feet, with a radius of 5,829.58 feet, a central angle of 03°57'05", and a chord bearing and distance of South 56°33'45" West, 401.95 feet to a 1/2" iron rod with plastic cap stamped "CHAPARRAL" found at the southwest corner of said Tract 2, the southeast corner of said Tract 1, at the beginning of a non-tangent curve to the left;
3. In a westerly direction, with said non-tangent curve to the left, an arc distance of 393.31

feet, with a radius of 5,829.58 feet, a central angle of 03°51'56", and a chord bearing and distance of South 52°43'50" West, 393.24 feet to a 1/2" iron rod with plastic cap stamped "TLS INC" found for the southeast corner of Lot 2, Toro Grand Subdivision, recorded in Doc. No. 2004075209 Plat Records, Williamson County, Texas, the southwest corner of said Tract 1 and the herein described tract;

THENCE North 20°51'36" West, 2859.15 feet, departing the north line of said East Whitestone Blvd., along the east line of said Toro Grand Subdivision, a called 2.498 acre tract as described in a General Warranty Deed to Huu Ngoc and Huong Thuy Le recorded in Doc. No. 2020087248 Official Public Records, Williamson County, Texas, a called 4.994 acre tract as described in a Warranty Deed with Vendor's Lien to Hai Q. Dinh recorded in Doc. No. 2020065702 Official Public Records, Williamson County, Texas, the west line of said Tract 1 and the herein described tract to an aluminum disk stamped "COCP ROW 4933 ROW 4933" found in the south line of the proposed New Hope Road, the southwest corner of Parcel 17, Part A, a called 0.646 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106874, of said Official Public Records, the northwest corner of the herein described tract;

THENCE along the south line of said proposed New Hope Road, the south lines of said 0.646 acre tract, of Parcel 17, Part B, a called 0.591 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106874, of said Official Public Records, of Parcel 17, Part C, a called 0.595 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106874, of said Official Public Records, the north line of the herein described tract, the following (5) calls:

1. North 70°00'49" East, 139.51 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
2. North 59°44'56" East, 50.64 feet to a 1/2" iron rod found for corner;
3. North 69°37'44" East, 249.92 feet to an aluminum disk stamped "COCP ROW 4933" found for corner;
4. North 61°55'33" East, 50.62 feet to an aluminum disk stamped "COCP ROW 4933" found for corner;
5. North 69°41'32" East, 683.95 feet to an aluminum disk stamped "COCP ROW 4933" found for the southeast corner of said 0.595 acre tract, the northeast corner of the herein described tract;

THENCE South 20°52'57" East, 2602.44 feet along the west line of said Lot 2, the east line of said Tract 3 and the herein described tract to the POINT OF BEGINNING and containing 3,185,794 square feet or 73.136 acres of land.

Schedule 2

**PARCEL B**
**PROPERTY DESCRIPTION**

BEING a 48.270 acre (2,102,644 square feet) tract of land, situated in the Washington Anderson Survey, Abstract No.15, City of Cedar Park, Williamson County, Texas, out of a called 49.987 acre tract described by a Plat of Rainbow Heights Subdivision, Lots 1-2, Block A, Cabinet AA, Slides 62-64 Plat Records, Williamson County, Texas and being more particularly described as follows:

BEGINNING at a 1/2" iron rod found in the north line of East Whitestone Blvd., RM 1431 (a 200' right-of-way) for the southwest corner of a called 126.36 acre tract described in Special Warranty Deed with Vendor's Lien to Indigo Ridge Development Partners, LLC. recorded in Doc. No. 2018008439 Official Public Records, Williamson County, Texas, the southeast corner of said Lot 1, Rainbow Heights Subdivision and the herein described tract.

THENCE along the north line of said East Whitestone Blvd., the south line of said Lots 1-2, Rainbow Heights Subdivision and the herein described tract the following three (3) calls:

1. South 69°00'11" West, 85.43 feet to a Brass Monument found at the beginning of a non-tangent curve to the left;
2. In a westerly direction, with said non-tangent curve to the left, an arc distance of 692.92 feet with a radius of 5,829.58 feet, a central angle of 06°48'37", and a chord bearing and distance of South 66°25'19" West, 692.52 feet to a 1/2" iron rod with plastic cap stamped "RPLS 6275" found for the southwest corner of said Lot 1, the southeast corner of said Lot 2 at the beginning of a non-tangent curve to the left;
3. In a westerly direction, with said non-tangent curve to the left, an arc distance of 50.31 feet, with a radius of 5,829.58 feet, a central angle of 0°29'40", and a chord bearing and distance of South 62°43'05" West, 50.31 feet to an "X" cut in concrete found for the southeast corner of a called 25 acre tract, known as Tract 3, as described in a Special Warranty Deed with Vendor's Lien to High Ridge development III, LLC. recorded in Doc. No. 2021184630 Official Public Records, Williamson County, Texas, the southwest corner of said Lot 2 and the herein described tract;

THENCE North 20°52'57" West, 2602.44 feet along the east line of said Tract 3, the west line of said Lot 2 and the herein described tract to an aluminum disk stamped "COCP ROW 4933" found in the south line of the proposed New Hope Road, for the southwest corner of Parcel 18, a called 0.456 acre tract described in General Warranty Deed to the City of Cedar Park recorded in Document No. 2022106872, of said Official Public Records, for the northwest corner of the herein described tract;

THENCE along the south line of said proposed New Hope Road, the south line of said 0.456 acre tract, the south line of Parcel 19, a called 0.701 acre tract of land described in General Warranty Deed to the City of Cedar Park recorded in Document No. 2022106872, of said Official Public Records, the north line of the herein described tract the following four (4) calls:

1. North 69°41'17" East, 219.31 feet to a 1/2" iron rod with plastic cap stamped "KHA" set at the beginning of a tangent curve to the right;



EXHIBIT 3

2. In an easterly direction, with said tangent curve to the right, an arc distance of 282.82 feet, a radius of 1447.00 feet, a central angle of 11°11'55", and a chord bearing and distance of North 75°17'15" East, 282.37 feet to a 1/2" iron rod with plastic cap stamped "KHA" set at the southeast corner of said 0.456 acre tract, southwest corner of said 0.701 acre tract, at the beginning of a compound curve to the right;
3. In an easterly direction, with said compound curve to the right a curve, an arc distance of 55.93 feet, a radius of 1447.00 feet, a central angle of 02°12'53", and a chord bearing and distance of North 81°59'38" East, 55.93 feet a 1/2" iron rod found for a reverse curve to the left;
4. In an easterly direction, with said reverse curve to the left, an arc distance of 275.17, a radius of 1553.00 feet, delta angle of 10°09'07", and a chord bearing and distance of North 78°01'31" East, 274.81 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for the southwest corner of Parcel 20, a called 5.644 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106875, of said Official Public Records, in the west line of a called 28.70 acre tract described in Special Warranty Deed with Vendor's Lien to Indigo Ridge Development Partners, LLC recorded in Document No. 2019008240, of said Official Public Records, the southeast corner of said 0.701 acre tract, the northeast corner of the herein tract

THENCE along the west lines of said 28.70 acre tract and said 126.36 acre tract, the east line of said Lot 1 and the herein described tract the following three (3) calls:

1. South 20°48'24" East, 1131.07 feet to a 1/2" iron rod found for corner;
2. South 21°16'44" East, 680.50 feet to a 1/2" iron rod found for corner;
3. South 20°42'10" East, 665.00 feet to the POINT OF BEGINNING and containing 2,102,644 square feet or 48.270 acres of land.

Schedule 3

**PARCEL C**
**PROPERTY DESCRIPTION**

BEING a 211.923 acre (9,231,344 square feet) tract of land, situated in the J.D. Anderson Survey, Abstract No.16, Williamson County, Texas, out of a called 214.803 acre tract described in a Special Warranty Deed to High Ridge Development II, LLC. recorded in Doc. No. 2021089316 Official Public Records, Williamson County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2" iron rod with plastic cap stamped "KHA" set for the southwest corner of Stonehurst Subdivision, Lot 15 recorded in Cabinet C, Slides 251-253 Plat Records, Williamson County, Texas, the southeast corner of the herein described tract, from which a 1/2" iron rod found for the northeast corner of Rainbow Heights Subdivision, Lot 1, Block A, Cabinet AA, Slides 62-64 Plat Records, Williamson County, Texas, the northeast corner of Parcel 19, a called 0.701 acre tract described in General Warranty Deed to the City of Cedar Park recorded in Document No. 2022106872, of said Official Public Records, bears North 69°32'38" East, 12.59 feet;

THENCE along the north line of said proposed New Hope Road, said 0.701 acre tract, of Parcel 15, a called 3.020 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106873, of Parcel 14, a called 0.008 acre tract described in General Warranty Deed to City of Cedar Park recorded in Document No. 2022106873, of said Official Public Records, the south line of the herein described tract the following eight (8) calls:

1. South 69°32'38" West, 199.32 feet to a 1/2" iron rod found (bent) at the beginning of a non-tangent curve to the left;
2. In a westerly direction, with said non-tangent curve to the left, an arc distance of 32.87 feet, having a radius of 1438.00 feet, a central angle of 01°18'35", and a chord bearing and distance of South 82°30'25" West, at 32.87 feet an aluminum disk stamped "COCP" found at the beginning of a non-tangent curve to the left;
3. In a westerly direction, with said non-tangent curve to the left, an arc distance of 365.49 feet, having a radius of 1562.00 feet, delta angle of 13°24'23", and a chord bearing and distance of South 76°29'51" West, at 364.66 feet to a 1/2" iron rod found for corner;
4. South 69°40'20" West, 1810.27 feet to an aluminum disk stamped "COCP" found for corner;
5. South 64°58'41" West, 378.30 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
6. North 88°28'41" West, 78.26 feet to an aluminum disk stamped "COCP" found for corner;
7. South 65°07'52" West, passing at a distance of 243.42 feet an aluminum disk stamped "REF WITNESS" found for reference, passing at a distance of 303.54 feet an aluminum disk stamped "REF WITNESS" found for reference, continuing for a total distance of 425.18 feet to a 1/2" iron rod found (BENT) for corner;
8. South 64°54'36" West, 78.32 feet to a 1/2" iron rod found for a southwesterly corner of a called 62.61 acre tract described in a Warranty Deed with Vendor's Lien to 690 New Hope Investments, LLC. recorded in Doc. No. 2022030308 Official Public Records, Williamson County, Texas, the southwest corner of the herein described tract;

THENCE departing the north line of said proposed New Hope Road, along the easterly line of said

62.61 acre tract, the westerly line of the herein described tract the following twenty-two (22) calls:

1. North 03°13'04" East, 30.47 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
2. North 20°28'33" West, 129.82 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
3. North 24°38'22" East, 247.97 feet to a 1/2" iron rod found for corner;
4. North 44°16'40" West, 123.37 feet to a 1/2" iron rod found for corner;
5. North 39°06'30" East, 34.19 feet to a 60D Nail in a tree found for corner;
6. South 87°44'26" East, 32.80 feet to a 60D Nail in a tree found for corner;
7. South 67°25'09" East, 18.78 feet to a 60D Nail in a tree found for corner;
8. North 66°42'17" East, 77.41 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
9. North 17°40'07" East, 32.61 feet to a 60D Nail in a tree found for corner;
10. North 27°13'35" East, 29.60 feet to a 60D Nail in a tree found for corner;
11. North 39°13'53" East, 21.23 feet to a 60D Nail in a tree found for corner;
12. North 22°32'27" East, 42.68 feet to a 60D Nail in a tree found for corner;
13. North 14°35'14" East, 40.23 feet to a 60D Nail in a tree found for corner;
14. North 48°39'00" East, 15.91 feet to a 60D Nail in a tree found for corner;
15. North 63°55'11" East, 23.25 feet to a 60D Nail in a tree found for corner;
16. North 18°47'47" East, 12.23 feet to a 60D Nail in a tree found for corner;
17. North 65°03'23" East, 48.90 feet to a 60D Nail in a tree found for corner;
18. South 71°29'41" East, 37.58 feet to a 1/2" iron rod found for corner;
19. South 71°22'07" East, 33.19 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
20. North 80°27'01" East, 78.12 feet to a 60D Nail in a tree found for corner;

South 65°27'34" East, 60.98 feet to a 60D Nail in a tree found for corner, from which a 1/2" iron rod bears South 20°11'58" East, 340.44 feet;

21. North 20°34'08" West, 2386.34 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for an interior corner of a tract described in a Distribution Deed to Mary Frances Burleson Roberts recorded in Doc. No. 2013049911, of said Official Public Records, for the northwest corner of the herein described tract, from which a found 60D Nail bears North 28°45'22" West, a distance of 86.76 feet;

THENCE North 45°35'46" East along the south line of said Mary Frances Burleson Roberts tract, the north line of the herein described tract, 1766.38 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner in the south line of Lot 2 of said Stonehurst Subdivision for an interior corner of said Mary Frances Burleson Roberts tract;

THENCE along the south line of said Stonehurst Subdivision, the north line of the herein described tract the following four (4) calls:

1. North 69°26'41" East, 352.80 feet to a 1/2" iron rod found for corner;
2. North 68°37'41" East, 367.08 feet to a 1/2" iron rod found for corner;
3. North 68°36'11" East, 285.66 feet to a 1/2" iron rod found for corner;
4. North 68°21'46" East, 113.16 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for the northeast corner of the herein described tract, from which a 1/2" iron rod found bears North 34°23'55" West, 2.95 feet;

THENCE along the west line of said Stonehurst Subdivision, the east line of the herein described tract the following twelve (12) calls:

1. South 20°59'19" East, 213.63 feet to a 1/2" iron rod found for corner;
2. South 18°48'57" East, 233.12 feet to a 1/2" iron rod in a tree found for corner;
3. South 16°17'29" East, 112.58 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
4. South 21°00'19" East, 357.23 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
5. South 20°52'19" East, 636.07 feet to a 1/2" iron rod found for corner;
6. South 20°59'52" East, 402.02 feet to a 1/2" iron rod with plastic cap stamped "AMERI SURVEY" found for corner;
7. South 21°13'19" East, 276.62 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
8. South 20°36'58" East, 279.93 feet to a 1/2" iron rod found for corner;
9. South 20°58'24" East, 279.60 feet to a 1/2" iron rod found for corner;
10. South 21°09'49" East, 282.39 feet to a 1/2" iron rod found for corner;
11. South 21°01'19" East, 284.73 feet to a 1/2" iron rod with plastic cap stamped "KHA" set for corner;
12. South 21°08'19" East, 277.79 feet to the POINT OF BEGINNING and containing 9,231,344 square feet or 211.923 acres of land.

# EXHIBIT B

## Permitted Exceptions

1. The restrictive covenants recorded in Cabinet AA, Slides 62-64 of the Plat Records of Williamson County, Texas.

2. Standby fees, taxes and assessments by any taxing authority for the year 2024, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

**THE FOLLOWING APPLY(IES) TO PARCEL A AND/OR TRACT 4**:

3. Landscape and pedestrian easement 25 feet in width along the East Whitestone Boulevard property line(s), as shown on the Plat(s) recorded in Cabinet AA, Slide 62 - 64 of the Plat Records of Williamson County, Texas, as shown on survey dated December 7, 2023, last revised January 3, 2024, prepared by James Janisse, Registered Professional Land Surveyor No. 6663 ("the Survey"). (TRACT 4)

4. Public utility easement 10 feet in width along the right-of-way property line(s), as stated on the Plat(s) recorded in Cabinet AA, Slide 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey. (TRACT 4)

5. Public utility easement 5 feet in width along the side property line(s) from the front property line to the front building line except where a side lot line is also the rear lot line of an adjacent lot, in which case the easement is along the entire length of the side lot line, as stated on the Plat(s) recorded in Cabinet AA, Slide 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey. (TRACT 4)

6. Building setback 25 feet in width along the East Whitestone Boulevard property line(s), as shown by the Plat(s) recorded in Cabinet AA, Slide 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey. (TRACT 4)

7. Water and wastewater easement granted to the City of Cedar Park, by instrument dated June 8, 2000, recorded under Document No. 2000038203 of the Official Public Records of Williamson County, Texas, as shown on the Survey. (TRACT 4)

8. Water and wastewater easement granted to the City of Cedar Park, by instrument dated June 14, 2000, recorded under Document No. 2000039521 of the Official Public Records of Williamson County, Texas, as shown on the Survey. (PARCEL A)

9. Water and wastewater easement granted to the City of Cedar Park, by instrument dated June 14, 2000, recorded under Document No. 2000039522 of the Official Public Records of Williamson County, Texas, as shown on the Survey. (PARCEL A)

10. Water and wastewater easement granted to the City of Cedar Park, by instrument dated June 14, 2000, recorded under Document No. 2000039524 of the Official Public Records of Williamson County, Texas, as shown on the Survey. (PARCEL A)

11. Utility easement granted to Pedernales Electric Cooperative, Inc., by instrument dated January 9, 2012, recorded under Document No. 2012002315 of the Official Public Records of Williamson County, Texas. (PARCEL A)

12. Terms, conditions and stipulations of that certain Joint Use Access Easement dated December 12, 2014, recorded under Document No. 2015003168 of the Official Public Records of Williamson County, Texas, as shown on the Survey. (PARCEL A AND TRACT 4)



**EXHIBIT 3**

13. Utility easement granted to Pedernales Electric Cooperative, Inc., by instrument dated July 14, 2015, recorded under Document No. 2015098959 of the Official Public Records of Williamson County, Texas. (PARCEL A)

14. Electric line easement granted to LCRA Transmission Services Corporation, by instrument dated April 24, 2019, recorded under Document No. 2019045000 of the Official Public Records of Williamson County, Texas. (TRACT 4)

**THE FOLLOWING APPLY(IES) TO PARCEL B:**

15. Landscape and pedestrian easement 25 feet in width along the East Whitestone Boulevard property line(s), as shown on the Plat(s) recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey.

16. Public utility easement 10 feet in width along the right-of-way property line(s), as stated on the Plat(s) recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey.

17. Public utility easement 5 feet in width along the side property line(s) from the front property line to the front building line except where a side lot line is also the rear lot line of an adjacent lot, in which case the easement is along the entire length of the side lot line, as stated on the Plat(s) recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey.

18. Building setback 25 feet in width adjoining and along the above shown right of way reserve along the property line(s), as shown by the Plat(s) recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey.

19. Building setback 25 feet in width along the East Whitestone Boulevard property line(s), as shown by the Plat(s) recorded in Cabinet AA, Slide(s) 62 - 64 of the Plat Records of Williamson County, Texas, as shown on the Survey.

20. Water and wastewater easement granted to the City of Cedar Park, by instrument dated June 8, 2000, recorded under Document No. 2000038203 of the Official Public Records of Williamson County, Texas.

21. Terms, conditions and stipulations of that certain Joint Use Access Easement dated December 12, 2014, recorded under Document No. 2015003168 of the Official Public Records of Williamson County, Texas, as shown on the Survey.

22. Electric line easement granted to LCRA Transmission Services Corporation, by instrument dated April 24, 2019, recorded under Document No. 2019045000 of the Official Public Records of Williamson County, Texas.

**THE FOLLOWING APPLY(IES) TO PARCEL C:**

23. Waterline easement granted to the City of Round Rock, by instrument dated May 6, 2013, recorded under Document No. 2013092031 of the Official Public Records of Williamson County, Texas, as shown on the Survey.

24. Electric line easement granted to LCRA Transmission Services Corporation, by instrument dated February 26, 2019, recorded under Document No. 2019027490 of the Official Public Records of Williamson County, Texas, as shown on the Survey.

**THE FOLLOWING APPLY(IES) TO ALL PARCELS AND TRACT 4:**

25. The rights of Upper Brushy Creek Water Control and Improvement District to levy taxes and issue bonds.

**THE FOLLOWING APPLY(IES) TO THE PARCEL INDICATED:**

26. Location of power poles and lines outside of a dedicated easements, as shown on the Survey. (PARCEL A)

27. Location of power poles and line outside of a dedicated easement, as shown on the Survey. (PARCEL B)

28. Rights or claims, if any, of adjoining property owner in and to that portion of the insured property lying between the fence and the southwest, northwest, and northeast property line(s), as shown on the Survey.(PARCEL C)

29. Fence outset along the southwest property line(s), as shown on the Survey. (PARCEL C)

30. Location of power poles outside of a dedicated easement, as shown on the Survey. (PARCEL C)

31. Notice of Lis Pendens recorded under Document No. 2023094351 of the Official Public Records of Williamson County, Texas, under Cause No. 23-1879-CC2 in County Court at Law No. 2 of Williamson County, Texas, styled "LCRA Transmission Services Corporation vs. High Ridge Development, LLC, MapleMark Bank, and Community Bank of Texas, N.A.", involving title to subject property. (PARCEL B)

32. Notice of Lis Pendens recorded under Document No. 2023094350 of the Official Public Records of Williamson County, Texas, under Cause No. 23-1880-CC3 in County Court at Law No. 3 of Williamson County, Texas, styled "LCRA Transmission Services Corporation vs. High Ridge Development II LLC and Community Bank of Texas, N.A.", involving title to subject property. (PARCEL C)

11-GF# 2023024716 JPB
Return to: Heritage Title
200 W 6th Street, Suite 1600
Austin, TX 78701



**EXHIBIT 3**

**ELECTRONICALLY RECORDED**
**OFFICIAL PUBLIC RECORDS**

**2024003269**

Pages: 15 Fee: $77.00
01/16/2024 10:27 AM
ATAYLOR

Nancy E. Rister

Nancy E. Rister, County Clerk
Williamson County,Texas

**EXHIBIT 3**

# EXHIBIT A-3

Citation (Out of State) and Service of Process
Served October 1, 2026

DELIVERED: 10/1/26
By: William Bailey
Assured Civil Process Agency

CITATION - OUT OF STATE
THE STATE OF TEXAS, COUNTY OF WILLIAMSON

NO. 26-3106-C425

TO: TERRA CARTA PARTNERS, LLC
1209 ORANGE STREET
WILMINGTON, DELIWARE 19801

DEFENDANT, GREETING:

YOU ARE HEREBY COMMANDED to appear before the Jason Tyler Bramow, of the 425th Judicial District Court of Williamson County, Texas, at the Williamson County Justice Center located at 405 Martin Luther King, in the City of Georgetown, Texas, by filing a written answer, at or before 10:00 a.m. on the Monday next following the expiration of twenty days after the date of service of this citation and PLAINTIFF'S ORIGINAL PETITION filed in said court on the 4th day of September, 2026 , numbered 26-3106-C425 on the docket of said court and styled:

OP III ATX HIGHRIDGE, LP VS TERRA CARTA PARTNERS, LLC

PLAINTIFF is represented by attorney Michael Lynn Navarre, whose address is: 901 S MoPac Expressway Building 1 Suite 200 Austin TX 78746

The nature of demand is as follows, to wit:

COURT GRANT RELIEF REQUESTED IN PETITION

as is more fully shown by a true and correct copy of the PLAINTIFF'S ORIGINAL PETITION accompanying this citation, and made a part hereof.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court, on this the 18th day of September, 2026.

ADDRESS OF LEAD ATTORNEY FOR PETITIONER:
Michael Lynn Navarre
901 S MoPac Expressway
Building 1 Suite 200
Austin TX 78746

Lisa David, District Clerk
PO Box 24, Georgetown, TX 78627
Williamson County, Texas
(512) 943-1212

DISTRICT COURT WILLIAMSON COUNTY TEXAS

BY: Audie Pedraza
Audie Pedraza, Deputy

YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT FOR THE RELIEF DEMANDED IN THE PETITION MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TEXASLAWHELP.ORG.

Date Served: 10/1/2026 247r
Time Served:
Server: WB 1699067

# The State of Texas

Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

Robert S. Howden
Secretary of State

Phone: 512-463-1662
Dial 7-1-1 For Relay Services
serviceofprocess@sos.texas.gov
www.sos.texas.state.gov

Service Number
2027567754

October 08, 2026

Terra Carta Partners, LLC
The Corporation Trust Company, Registered Agent
1209 Orange Street
Wilmington, DE 19801

RE: **OP III ATX Highridge, LP vs Terra Carta Partners, LLC**
425th Judicial District Court of Williamson County, Texas
Cause No. 263106C425

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by Certified Mail, return receipt requested, a copy of the process received by the Secretary of State of the State of Texas on October 01, 2026.

Refer inquiries to:

Michael L. Navarre
Beatty Bangle Strama, PC
901 S MOPAC EXPY
BLDG 1 STE 200
AUSTIN, TX 78746-5776

Sincerely,

Service of Process
Government Filings
512-463-1662

CITATION - OUT OF STATE
THE STATE OF TEXAS, COUNTY OF WILLIAMSON

NO. 26-3106-C425

TO: TERRA CARTA PARTNERS, LLC
1209 ORANGE STREET
WILMINGTON, DELIWARE 19801

DEFENDANT, GREETING:

YOU ARE HEREBY COMMANDED to appear before the Jason Tyler Bramow, of the 425th Judicial District Court of Williamson County, Texas, at the Williamson County Justice Center located at 405 Martin Luther King, in the City of Georgetown, Texas, by filing a written answer, at or before 10:00 a.m. on the Monday next following the expiration of twenty days after the date of service of this citation and PLAINTIFF'S ORIGINAL PETITION filed in said court on the 4th day of September, 2026 , numbered 26-3106-C425 on the docket of said court and styled:

OP III ATX HIGHRIDGE, LP VS TERRA CARTA PARTNERS, LLC

PLAINTIFF is represented by attorney Michael Lynn Navarre, whose address is: 901 S MoPac Expressway Building 1 Suite 200 Austin TX 78746

The nature of demand is as follows, to wit:

COURT GRANT RELIEF REQUESTED IN PETITION

as is more fully shown by a true and correct copy of the PLAINTIFF'S ORIGINAL PETITION accompanying this citation, and made a part hereof.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court, on this the 18th day of September, 2026.

ADDRESS OF LEAD ATTORNEY FOR PETITIONER:
Michael Lynn Navarre
901 S MoPac Expressway
Building 1 Suite 200
Austin TX 78746

Lisa David, District Clerk
PO Box 24, Georgetown, TX 78627
Williamson County, Texas
(512) 943-1212

DISTRICT COURT WILLIAMSON COUNTY TEXAS

BY: Audie Pedraza
Audie Pedraza, Deputy

YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT FOR THE RELIEF DEMANDED IN THE PETITION MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TEXASLAWHELP.ORG.

SEC OF STATE-RECEIVED
OCT 1 '26 PM 12:04

# CITATION - PERSONAL SERVICE- OUT OF STATE
## THE STATE OF TEXAS, COUNTY OF WILLIAMSON
## NO. 26-3106-C425
## 425th Judicial District Court

Style of case: **OP III ATX HIGHRIDGE, LP VS TERRA CARTA PARTNERS, LLC**

*** RETURN OF SERVICE (OUT OF STATE)**

THE STATE OF ____________________ COUNTY OF ____________________

Before me, the undersigned authority, on this day personally appeared *(please print)*____________________, who after being by me duly sworn deposes and says that he is above twenty-one years of age, of sound mind, and in no manner interested in the within styled and numbered cause, and competent to make oath of the facts herein stated:

*CHECK APPROPRIATE BOX(S) BELOW*:

☐ Came to hand on the ________day of ________________, 20______, at ______o'clock ___.M., and executed in ______________________County, State of ___________,by delivering to said Defendant, to-wit: ____________________________________at________o'clock___M.,________________20____;
*(manner of service)* *( time and date of service )*
in person, a true copy of this citation, with a true and correct copy of the PLAINTIFF'S ORIGINAL PETITION attached thereto, having first endorsed on such copy of said citation the date of delivery.

☐ Citation was ***NOT SERVED***. Service was attempted on: ________________________, 20_____. The diligence used to execute service by the officer or person authorized to execute this citation was:____________________________________________.

☐ Citation was ***NOT EXECUTED*** because ____________________________________.

☐ The information received as to the whereabouts of said defendant being:
____________________________________________.

**COMPLETE THIS SECTION ONLY IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
*In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.*

My name is ____________________________________, my date of birth is ____________________, and my address is
*Please print. (First, Middle, Last)*
____________________________________ *(Street, City, Zip).*

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in ______________________County, State of ________________, on the ________ day of ________________, 20______.

*Declarant/Authorized Process Server* *ID # & expiration of certification*

**FEE FOR SERVICE OF CITATION: $ ____________**

Before me, on this day personally appeared____________________________________, who being by me duly sworn on his oath deposed and said that he is of sound mind, and in no manner interested in the within styled and numbered cause, and competent to make the oath of facts herein stated, and that he has read the foregoing Return of Citation, and that every statement contained therein is within his personal knowledge true and correct.

____________________________________
*Signature of person who served or attempted to serve citation.*

Subscribed and sworn to before me on ____________________, 20______, to certify which witness my hand and official seal.

____________________________________
*Signature of Notary Public or other authorized to take affidavits.*

**To be used only by officer or authorized person serving this citation out of state. (The party serving this citation shall sign and swear to the above return before a notary public or other authorized to take affidavits.)*

CITATION ISSUED BY LISA DAVID, DISTRICT CLERK, WILLIAMSON COUNTY, TEXAS,
PO BOX 24, GEORGETOWN, TEXAS 78627 (512) 943-1212